## Homire v. Stratton & Terstegge Company.

(Decided March 12, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 3).

1. Limitation of Actions—Limitation Applicable to Particular Actions—Written Contracts.—When a contract in writing, not required to be so by statute, is changed by subsequent parol agreement of the parties thereto, if the change goes to a material provision of the contract, a new contract results, which operates to discharge the original contract, and to substitute in its stead a new contract by parol, some of the terms of which are identified by the previous contract in writing; and in such case the five year statute of limitation applies. But, even conceding that such change was merely a subsequent parol modification of the terms of a contract in writing, the five year statute still applies for the reason that by the parol modification the entire terms and provisions of the contract are rendered subject to establishment by parol proof in the same measure as if the contract were wholly by parol.

2. Limitation of Actions—Nature, Validity and Construction in General.—Periods of limitation are graduated mainly with respect to the nature and quality of the evidence by which the contract sued upon must be established. The modification, by parol, of the terms of a contract in writing, although not required by statute to be so, operates to reduce the whole contract to the status of an oral contract in determining the applicability of statutes of limitation.

3. Master and Servant—Services and Compensation—Wages and Other Remuneration—Additional Compensation.—Where the servant is employed at a salary of fifty dollars per month with the further provision that if after eighteen months the parties decide to continue under the contract, the servant's compensation is to be one hundred dollars per month to apply from the beginning of the employment, the continuation under the contract and payment of the extra compensation is optional with the master; and to establish the exercise of such option by the master, proof of its voluntary act in that respect and of a free and unequivocal acknowledgment of its liability for the increased compensation is necessary.

CHARLES CARROLL, T. C. CARROLL, J. M. LEE and M. M. LOGAN for appellant.

GIBSON & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

In June, 1905, appellant, L. W. Homire, approached Mr. Terstegge, an officer of appellee company, upon a proposition of establishing a branch or department of the then business of appellee company, which negotiation led up to the execution of the following written contract: "Memorandum:          Louisville, Ky., July 25, 1905.

"The Stratton & Terstegge Company agree with L. W. Homire that Homire is to have charge of the sales and advertising of the Kentucky Stamping Company, a department of the business of the Stratton & Terstegge Company, to be devoted to the marketing of mail-boxes, incubator goods and such other lines as it may appear to the company advisable to manufacture for this department. Homire is to receive a salary of fifty dollars per month; and this is to represent the limit of his compensation in case Stratton & Terstegge Company decide at the end of six months or sooner, to discontinue this agreement. If however, after a period of six months, they decide to continue under this arrangement, the said Homire's salary is then to be one hundred dollars per month, which is to apply from the beginning, with such

participation in the profits as Stratton & Terstegge Company may see fit to allow him. This agreement to be in force from August 1, 1905. (Signed) Stratton & Terstegge Company, by H. Terstegge, President. L. W. Homire.''

In due time, Homire began work under this contract. On January 8, 1906, a little over five months after the contract became effective, appellee company wrote appellant a letter in which it was said: ''We have faith enough in this matter to wish to continue the contract, but not at the increased price until some business shall have developed showing there will be at least sufficient gross profit to take care of the expenses incurred at even the low salary basis. Please advise if it will be agreeable to extend the six months term to nine months or one year preferably, before we are to decide about continuing the contract on the higher salary basis, as in our opinion it will come nearer taking six months than three months additional time, to determine the success or failure of the venture.''

To this letter, appellant replied on January 13, 1906, in a letter in which he said: ''As to the contract, will say the matter of whether the increased salary goes into effect, or rather is settled upon, now or later, does not make very much difference to me. I feel very confident that the whole thing will come out all right. * * *So it will be all right to defer the matter of my compensation until later. * * * · I want to develop these lines and to do so with the greatest economy. To do so under a year would be too much to expect, and I would like to feel that I will have until a year from the first of February at which time our first six months expires, to see what there is in it.''

Shortly after this letter was received by appellee, it was verbally agreed between appellant and appellee company that the trial period should be extended until February 1, 1907, a year from the expiration of the six months period fixed in the contract in writing.

Appellant continued in the service of appellee company, receiving fifty dollars per month each month for his services, until February 13, 1907, on which date he wrote appellee company a letter calling attention to the fact that the time fixed had expired. On March 1, appellee company responded in a letter in which it was said:

''If we must face a larger expense, now that the incubator season is over and it will not be possible to get

returns until way next fall, think we will be forced to decide to discontinue the contract between us.   *   *   * We are sorry that the conditions and your necessities are such that we feel we must close the contract, for we assure you that we want to be just to you, and, therefore, were willing to continue in the hope that we would finally see profit but when there is no profit, and nothing but abuse, it is probably the best for both of us that the agreement should terminate."

Appellant testified that he looked upon this letter as a dismissal. He testified as follows: "I looked on the letter as a dismissal and went to work to get my property out of the department and move it home, and about four o'clock that afternoon Mr. Terstegge came up there and asked me what I was doing; I told him I got his letter and I was moving out. He said he didn't mean it that way. He said he thought there ought to be some talk about it. I told him I didn't understand it that way; there had been enough talk; that I supposed his letter was a dismissal and I was taking it that way; and as for the back-pay I told him he was already a month late on his contract but I would accept it. I demanded that back-pay ever since. Well, that was four o'clock in the afternoon. At the close of his office hours we talked until about eleven o'clock that night, and never came to any conclusion except this; that he would go exactly according to contract that is, pay me one hundred dollars a month from February 1, 1907, but he wanted me to let him off for the back-pay, and I insisted that I would not do it. We talked until about eleven o'clock, about seven hours about it, and when I left him at eleven o'clock that night he said he would pay me one hundred dollars a month commencing February 1, 1907, according to the contract, and asked me to see if I could not make some arrangement about that nine hundred dollars back-pay that would be mutually agreeable."

Thereafter appellant continued in the service of appellee company, receiving one hundred dollars per month from February 1, 1907, until some time in 1912; and he states that he continued to demand the back-pay until his services with appellee company terminated. On October 28, 1912, he sued appellee company in the Jefferson Circuit Court for the said nine hundred dollars; and, at the close of the evidence of the plaintiff, the court directed a verdict for the defendant upon the ground that

the claim sued upon was barred by the five-year statute of limitations. Plaintiff appeals.

It will be sen that the claim of appellant to this nine hundred dollars rests primarily upon the verbal understanding made in January, 1906, by which the time was extended until February 1, 1907, for appellee company to decide whether or not it would "continue under this arrangement."

Appellant contends that this was a mere modification, by parol, of the written contract, and that the written contract still remained in force although subject to and amended by the subsequent parol modification; while appellee contends that by that verbal agreement a new contract was effected, a parol contract, whose terms were in part identified by the previous written contract, and that if a new contract was not effected in that manner, still where a written contract is changed by parol agreement, the modified contract is reduced to the status of a parol contract in determining the statute of limitations thereto applicable.

It is sometimes difficult to determine, when a change in a written contract has been effected by parol agreement of the parties, whether the result is a mere modification of the original written agreement, or the substitution of a new contract by parol operating in discharge of the original contract.

The weight of authority, however, seems to be that when the change so agreed upon, goes to a material provision of the original contract, a new contract results, which operates as a discharge of the original contract.

In the written contract in question in this case, the increased compensation under contemplation was manifestly the principal thing in view and the principal object of its execution; that increased compensation was the material provision of the contract. A change in respect of that subject was a change in a material provision of the contract. Under the original contract, if at the end of six months from August 1, 1905, appellee company decided to dispense with appellant's services, as it had the right to do, the sum of three hundred dollars was involved. Under the contract as amended, appellee company had twelve months longer, or eighteen months from August 1, 1905, to decide whether it considered the retention of appellant's services sufficiently desirable to warrant its paying him the sum of nine hundred dollars in addition to the fifty dollars per month he had been re-

ceiving. That was a change of a material provision of the contract, and such change was effected by parol agreement. The effect of such change, therefore, was to discharge the original contract, and to substitute in its stead a new contract; and that new contract, being in parol, the five-year statute of limitations is applicable thereto.

But, even conceding that the only effect of the verbal agreement to extend the time in which appellee company should come to the decision mentioned, was a subsequent parol modification of the terms of the contract in writing, a moment's consideration of the reason for different periods of limitation will demonstrate that the five-year statute applies.

Periods of limitation are graduated mainly with reference to the nature and quality of the evidence by which the contract sued upon must be established. The limitation in this State, for instance, upon contracts in writing is fifteen years, while upon oral contracts it is but five years. In the one case, there is a permanent memorial of the terms of the agreement, while in the other, the terms of the agreement are rendered subject to the uncertainties of human testimony and to the frail and perishing nature of parol proof.

The modification of a contract in writing, not required to be so by statute, by parol agreement of the parties, which goes to a material part thereof, therefore, should operate to reduce it to the status of a contract by parol, in determining the applicability of statutes of limitation; for, when so modified, its entire purport, terms and construction are rendered subject to establishment by parol proof in the same measure as those of a contract entirely by parol. And, in addition, it is more reasonable that the parol part, being the more recent expression of the intention of the parties, should draw to its nature the retained stipulations of the written contract, than that the written contract should draw to it the new parol stipulations. Therefore; when by subsequent parol agreement of the parties, a written contract has been modified in its material parts, the whole contract is thereby reduced to the status of a parol agreement, in determining the applicability of statutes of limitations.

So, whether the extension of time was a mere modification by parol of the terms of the original written contract, or whether it created a new contract, discharging

the original contract, the five-year statute of limitation applies; and the lower court properly directed a verdict for the defendant upon that ground.

2. That which has heretofore been said, has been upon the theory that appellee company was at one time under legal obligation to pay to appellant the sum of nine hundred dollars, and that such claim became barred by the statute of limitations, but the court is of the further opinion that appellee company never was obligated to pay appellant this sum.

It will be observed that the writing says, "If, however, after a period of six months (eighteen months as amended) they (referring to appellee company) decide to continue *under this arrangement,* the said Homire's salary is then to be one hundred dollars per month which is to apply from the beginning," thus putting it in the power of appellee company to decline to continue under the agreement, and in that way, to limit appellant's compensation to fifty dollars per month for the eighteen months. If, after that period, appellee company did decide to continue appellant's services under the contract, then appellant was entitled to the nine hundred dollars; but the contract was one which appellee company could terminate at any time before they "decided to continue under the arrangement," that is, before they decided to pay him the nine hundred dollars; and if no such decision was reached by appellee company, no obligation arose to pay to appellant the extra fifty dollars per month. The contract was, not to pay appellant the extra fifty dollars per month if appellee company continued appellant in its service, but to pay it if he was continued in such service, under the contract. In other words, appellee company merely agreed to pay appellant the increased compensation in the event it chose to do so, the payment thereof being a matter purely optional with appellee company; and the only condition, upon the happening of which appellant could claim, as matter of right, the extra fifty dollars per month, was a voluntary decision and determination upon the part of appellee company to continue under the contract and to pay said sum to him. It was optional with appellee company to decide whether it would so continue appellant in its service and pay him the increased compensation; but if it did so decide, then of course, its option became converted into legal liability to pay appellant the nine hundred dollars. Under the contract, appellant had the right to quit,

should appellee company at the termination of the eighteen months refuse to pay him the extra fifty dollars per month, but he had no other remedy unless and until appellee company affirmatively decided to continue under the contract and to pay him the increased compensation in question.

Appellant testified that when on March 1, 1907, he received the letter from appellee company which has been quoted above, he considered it as a dismissal. If it was such, that was the end of the matter. But appellant further says that after a seven-hour conference with Mr. Terstegge that night, the latter said they would continue under the contract; that appellee company would pay appellant one hundred dollars per month from February 1, 1907, and no decision was reached with reference to the nine hundred dollars. This was not sufficient to show a continuing under the contract. Appellee company did not agree to pay appellant one hundred dollars per month for any part of the eighteen months prior to February 1, 1907.

If the contract had been to pay appellant the extra fifty dollars per month in case he continued in the service of appellee company after the eighteen months period, a question of fact would be presented as to whether a new contract was effected from February 1, 1907, with the burden of proof on appellee company to make such showing; but this contract was to pay fifty dollars extra compensation per month for those eighteen months, if the parties continued under the contract, and a continuation under the contract necessarily implies an affirmative act of decision and a free confession by appellee company of liability for the increased compensation. It was optional with appellee company whether it would continue under the contract, and nothing but a free and unequivocal admission of liability for the increased compensation could be consistent with the voluntary exercise of that option.

The facts testified to by appellant show, not a continuation under the contract with the consequent acknowledgement of liability for the increased compensation, but rather the making of a new contract, by the terms of which appellant from February 1, 1907, was to receive one hundred dollars per month, and the matter of the nine hundred dollars continued optional with the appellee company.

Therefore, no legal liability was established in appellant's behalf as against appellee company; that which was originally only a matter of choice upon its part was never, by act of the parties or operation of law, transformed into a legal liability.

Judgment affirmed.