## Hannon et al. v. Bodkin's Administratrix.

(Decided May 28, 1935.)

J. E. WARREN and M. C. ANDERSON for appellants.

WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellee, Ora Bodkin, administratrix of the estate of her deceased husband, Ike Bodkin, who died in March, 1931, brought this suit in the Ballard circuit court against the appellants, Joe B. Hannon and her husband, Frank B. Hannon, to recover of them on a note for $1,800 dated June 5, 1929, due one year from date, which appellants had executed to her decedent in his lifetime and secured same by a mortgage of even date on three contiguous tracts of land lying in Ballard and Carlisle counties, Ky. It was further alleged that the defendants failed to pay the taxes on the mortgaged land for the years 1928 and 1930, and that her decedent paid the said taxes to the respective counties in which the land was located, in the sum of $577.72, and asked that she recover this amount in addition to the note and interest.

Defendants filed their answer and counterclaim denying certain allegations of the petition, but admitted their liability on the note.

For their counterclaim, defendants pleaded that defendant Joe B. Hannon's maiden name was Joe B. Dupoyster, and that on April 15, 1924, and before her mar-

riage to her husband and codefendant, Frank B. Hannon, she together with her brother, Donvin Dupoyster, was the owner of the land described in the plaintiff's petition and covered by the mortgage, and that she was the holder of the record title of the said land in her own name as Joe B. Hannon, but it is really and in truth the property of Joe B. Hannon and Donvin Dupoyster, each owning one-half thereof. She alleged that on April 15, 1924, she, being unmarried and being Joe B. Dupoyster, together with Donvin Dupoyster, entered into a contract of sale with Ike Bodkin, plaintiff's decedent, whereby she and Donvin sold and conveyed to the decedent certain timber described in the contract.

She alleged that under the terms of the contract the decedent was to pay to the defendants $360 rent on 60 acres of land for the year 1929, and $360 rent on 60 acres of land for the year 1930; and that in addition thereto in the year 1930, decedent rented from the defendants 40 additional acres of land for which he agreed to pay $6 an acre, or $240, and that in the year 1931, decedent rented from defendants 100 acres of land for which he agreed to pay $6 per acre, or $600, and in the year 1932, decedent's administratrix continued to occupy, rent, and use the 100 acres of land, and they sought to recover $600 rent. They further alleged that under the contract decedent was to erect two tenant houses on the lands of the defendants, and he failed and neglected to erect same and by reason of his failure had breached his contract, and they sought to recover the sum of $1,000 in damages on this item. They further alleged that decedent entered upon the lands of the defendants and cut merchantable and valuable timber not embraced in the contract of sale and asked to recover $200 on this item. They further alleged that decedent had collected from the Kentucky Utilities Company $100 for the privilege of cutting certain timber owned by the defendants and in which decedent had no interest and for which the Kentucky Utilities paid decedent $100 which he retained, and they asked to recover $100 on this item. They further alleged that during the years 1928, 1929, and 1930, Bodkin used a logyard and sawmill site on the lands of the defendant, and they asked to recover $100 per year or a total of $300 on this item. They also alleged that under the terms of the contract decedent agreed to turn back each year a minimum of

100 acres of land for clearing, and that he failed and neglected to do so, and they asked to recover $600 on this item. The total sum of their various items under their counterclaim was $4,360. Later, the defendants filed an amended answer, set-off, and counterclaim in which they alleged that by the terms of the contract for the sale of the timber dated April 15, 1924, they sold to decedent, Bodkin, all the timber standing on the lands described, which should be cut and removed therefrom by January 1, 1931, and that on January 1, 1931, there remained standing and uncut on the land, 400,000 feet of timber belonging to the defendants; that beginning about September, 1933, the plaintiff entered upon the land and cut and removed 400,000 feet of timber, which was of the value of.$6 per thousand feet, or a total value of $2,400, and sought to recover this sum in addition to the items set out in the original counterclaim and set-off. Plaintiff replied to the amended answer, set-off, and counterclaim denying the allegations thereof and affirmatively pleaded that on the 5th day of January, 1929, the original timber contract under date of April 15, 1924, was by writing signed by the defendants extended to December 31, 1933, as follows:.

"This writing Witnesseseth: That Whereas, Ike Bodkin has heretofore purchased the timber on the tract of land which at that time belonged to myself and my brother, Donvin Dupoyster, and the terms of said purchase, the time given said Bodkin in which to remove said timber will expire in the year 1930, and, Now, in order to accommodate said Bodkin and for his convenience, the time in which for him to cut and remove said timber is hereby extended until the 31st day of December, 1933.

"Witness my hand this the 5th day of January, 1929.

"[Signed.]   Joe B: Hannon
"[Signed.]   Frank B. Hannon."

Plaintiff further alleged that but for the extension of the contract Bodkin would have cut and removed all of the timber prior to said time, but that by reason of the extension giving until the 31st day of December, 1933, they had the right to cut and remove the timber under the extension of the contract.

A rejoinder was filed by the defendants in which

they denied the extension of the original contract was valid on the ground that Joe B. Hannon was a married woman at the time she undertook to execute the writing purporting to extend the time for cutting and removing the timber which writing purported to convey an interest in real estate, and that her husband, Frank B. Hannon, did not join in the writing except to sign his signature at the end thereof. They further alleged that the writing was without consideration and for that reason void.

Plaintiffs filed their surrejoinder alleging that on the 10th day of May, 1927, Donvin Dupoyster executed a mortgage to Bernice Dupoyster in the sum of $1,000 secured by a mortgage on his one-half undivided interest in the lands described in the petition, and that on the 17th day of December, 1926, Donvin Dupoyster and Bernice Dupoyster executed and delivered to the defendant, Joe B. Dupoyster Hannon, their note for $923.27, secured by a mortgage upon the interest of Donvin Dupoyster in the lands described in the petition. That on the 17th day of December, 1926, Donvin Dupoyster and his wife, Bernice Dupoyster, executed to J. P. Edwards a mortgage securing an indebtedness of $1,010.31, and that on the second day of January, 1929, there was pending in the Ballard circuit court an action instituted by Edwards seeking a foreclosure of his mortgage liens.

It was alleged that in a general settlement of that litigation, Donvin Dupoyster conveyed to Joe B. Hannon his undivided interest in the lands, and she assumed the payment of the indebtedness due J. P. Edwards and the indebtedness due Bernice Dupoyster and agreed to cancel the indebtedness due her by her brother, Donvin; that it was agreed between Joe B. Hannon and Ike Bodkin that if he would procure for her $1,800 with which to satisfy J. P. Edwards' indebtedness and make a necessary payment of $500 to Bernice Dupoyster and pay other fees and costs incurred against Donvin Dupoyster, that she would extend the time for removing the timber from the lands involved; and she would so execute said extension if Bodkin would furnish to her $1,800, which is the $1,800 evidenced by the note sued on in this case.

Joe B. Hannon filed a rebutter, in which she denied that the $1,800 loan to her constituted any valid or

valuable or any consideration for the extension of said contract to cut and remove timber.

There were other intervening pleadings filed which are not in question in this appeal, and it is therefore unnecessary for us to discuss them.

Issue joined upon the pleadings above indicated, the evidence was taken and the cause submitted to the chancellor, and he entered judgment for the plaintiffs on the note with legal interest, which amounted to $2,-376, and the taxes paid by plaintiffs as above indicated in the sum of $577.72, making a total of $2,953.72. The chancellor further found for the defendants on their counterclaim and set-off as follows: Rent on the 60 acres of land at $6 per acre for 1929, $360; rent on 100 acres of land at $6 per acre for the year 1930, $600; rent on 100 acres of land at $6 per acre for the year 1931, $600; damages on account of failure to erect the two 4-room tenant houses, $800. making a total of $2,360.

The sum found on the countreclaim was deducted from the $2,953.72 found for the plaintiff, leaving a balance of $593.72, which was adjudged to the plaintiff, and remainder of the counterclaim and set-off was dismissed. Defendants appeal.

Appellants insist that in addition to the sum allowed on their set-off and counterclaim, there should have been allowed: (1) $1,200 as the value of the timber cut and removed from the land in 1933 (which was under the extension of the contract); (2) additional allowances for costs of erecting the tenant houses, $200 or $1,000 instead of $800 as allowed by the chancellor; (3) $100 as the value of the timber taken from the ''hill tract''; and (4) $300 as the value of the occupation of the mill and logyard, making a total of $1,800.

Items II, III, and IV present a question of evidence only.

With respect to item II (costs of erecting tenant houses), witnesses for defendant testified that such houses would cost $500 each. On the other hand it was shown by the witness for plaintiff, who had been engaged in the timber and lumber business for a number of years, that he offered to build the houses at a cost of $219.31 each, which was less than one-half the cost estimated by the defendant's witness. The chancellor

who knew the parties and the local conditions fixed the cost of building the houses at $400 each, which was considerably nearer the value fixed by witnesses for defendants than the values fixed by the witnesses for plaintiff. In view of the conflict of evidence and the value fixed by the chancellor, we do not think that we should disturb the finding of the chancellor.

Item III (value of timber cut from hill tract) comes within the same category as item II, i. e., a conflict of evidence produced by the respective parties. According to the evidence of witnesses for the defendants, the timber cut and removed from the hill tract was probably of the value of $100, but their evidence is contradicted by witnesses for plaintiff. J. P. Edwards, who was agent of defendants, the Dupoyster heirs, and in charge of their estate and business at that time and place, testified as follows:

"Q. In this suit there is some timber on what is known as the hill tract of Dupoyster land, they are claiming Mr. Bodkin cut timber off of that hill tract? A. I don't know anything about that.

"Q. Didn't he cut some timber for you? A. He cut a few trees around the mill there for me and sawed them up.

"Q. At whose request and with whose permission did he do that? A. Mine.

"Q. You were agent for the Dupoyster heirs? A. Yes. A few trees shading a field and I had him cut them and saw them.

"Q. Did you get the lumber they were sawed into? A. Yes.

"Q. Do you know of him cutting any other on that hill tract? A. No.

"Q. Did you go down there on the hill tract and look after it while Mr. Bodkin was cutting the timber? A. I was over it a few times.

"Q. You say you never saw him cut timber on that hill tract except what you told him to cut for you? A. Yes."

The above evidence of Edwards is uncontradicted. According to his evidence there was a very small amount of timber cut and removed from the hill tract, and such as was cut and removed was at the direction and with

the consent of Edwards, agent in charge for defendants. We think the evidence is sufficient to sustain the chancellor in disallowing any recovery on this item.

Item IV (value of occupation of mill or logyard) comes within the same category as items II and III. The use of the mill and logyard is not mentioned in the timber contract, and the evidence respecting the right of Bodkin to use the mill and the logyard is not clear except that of the defendant's agent, Edwards, who testified that the mill site was not rented to Bodkin, but he, Edwards, told Bodkin to put the mill there to cut the timber and Bodkin used the mill and logyard by his permission, and that he was agent for Dupoyster heirs at that time. If Edwards as agent for defendants had rented these premises to Bodkin, or had Bodkin moved upon same without Edwards' consent or permission, then a different question might be presented. But Edwards says that it was not rented to Bodkin, and Bodkin used it by his permission and under his authority as agent for defendants. In these circumstances, defendants are not entitled to recover of Bodkin's estate on this item.

Item I involving the question of the right of plaintiff to cut and remove the timber from the land in 1933 under the extension contract presents a question of law.

On October 6, 1930, which was after the extension contract, Bodkin sold the timber to one Viniard, who cut and removed the same from the land the remainder of the year 1930 and through 1931. The contract between Bodkin and Viniard then became involved in litigation between them, and resulted in a judgment in favor of Bodkin's administratrix, and Viniard appealed to this court. The opinion in that case (Viniard v. Bodkin's Adm'x) is reported in 254 Ky. 841, 72 S. W. (2d) 707.

The judgment was not superseded in the lower court, however, and a sale of the timber was made by the commissioner of the court, and Mrs. Bodkin, the administrator, bought the timber at that sale. Thereafter, in the latter part of the year 1933, Mrs. Bodkin, the plaintiff in this action, cut and removed the remainder of the timber from the land, which she claims she had the right to do under the extension of the contract and under her purchase at the commissioner's sale.

The defendant's contention is that the sale of the timber from the Dupoyster heirs to Bodkins under the contract of April, 1924, was a sale of real estate and was a sale only of so many trees as Bodkins cut and removed between April 15, 1924, and January 1, 1931, and the right to cut and remove timber after December 31, 1930, expired on that date, and the contract purporting to extend the time to cut and remove other timber was a contract for the sale of real estate and was void because (a) Frank B. Hannon, husband of Joe B. Hannon, did not join in the body of that writing, and (b) that it was not supported by a consideration. To support their first contention, defendants rely upon the case of Reeves v. Walker, 219 Ky. 615, 294 S. W. 183. The facts and transactions involved in the Reeves-Walker Case, supra, are somewhat complicated, and we do not deem it necessary to give time and space to repeat them in this opinion. It is sufficient to say that the facts in that case are not analogous to the ones in the present case, and we do not think it supports the contention of defendants. The case of Farmers' Bank of Hardinsburg v. Richardson, 171 Ky. 340, 188 S. W. 406, is also cited and relied on. In that case, the wife of Richardson was married at the time she executed the contract of sale in which her husband did not join. The court held that the contract was void under the provisions of sections 505 and 506 of the Kentucky Statutes, because her husband did not join in the contract. But in the case at bar, the appellant, Joe B. Dupoyster, was a single woman at the time she executed the contract of sale of the timber to Bodkins, in April 1924, and the title to the timber then passed under that contract. The writing extending the time to cut and remove the timber does not purport to be a contract of sale, but a mere extension of time in which to complete the contract theretofore made. This extension was given approximately one year before the expiration of the original contract, and if plaintiffs could have cut and removed the timber in the last four months of 1933, obviously they could have cut and removed same within the lifetime of the original contract had not defendants consented to the extension. By reason of defendants' agreement and consent that the time be extended, Bodkins was prevented from cutting and removing the timber within the time prescribed in the original contract. Frank B. Hannon's name not appearing in the body of

the contract of extension, it was ineffectual as a sale of real estate, but it was effectual as consent that the timber may be cut and removed under the original contract. A contract may be changed or modified with respect to time to perform same, with less formality than would be required for an original or new contract, and such right is coextensive with the power to make the original contract. Viniard v. Bodkin's Adm'x, supra, and cases cited therein.

Furthermore, the record does not disclose that there were any objections made to the sale of the timber from Bodkins to Viniard which was after the contract of extension was signed, nor was there any objection made to Mrs. Bodkin, administratrix, cutting and removing the timber in the latter part of 1933, nor any complaint made until the filing of this action. Conceding that the contract of extension was not effectual as a sale of real estate, yet, in view of the conduct of defendants, in that they induced Bodkin to defer cutting and removing the timber within the lifetime of the original contract and made no objection thereto until after the timber had been so cut and removed, we think they should be and now are estopped to complain of a situation in which they find themselves as a result of their own voluntary conduct. Nothwang v. Harrison et al., 126 Ark. 548, 191 S. W. 2.

The judgment is affirmed.