## AMERICAN FRUIT GROWERS, INC., v. HAWKINSON.—106 S. W. (2d), 565.

Middle Section. March 1, 1937.

Petition for Certiorari denied by Supreme Court, June 17, 1937.

R. T. McCready, of Pittsburgh, Pa., and Lowe Watkins, W. B. Marr, and J. Shelton Luton, all of Nashville, for appellant American Fruit Growers, Inc.

Alfred T. Adams, of Nashville, for appellee J. A. Hawkinson.

CROWNOVER, J. This is a suit on a contract of suretyship.

The original bill in this cause was filed by the complainant, the American Fruit Growers, Inc., against J. A. Hawkinson, to recover about $13,000, for which he was alleged to be bound as surety for Roy C. Hawkinson.

Roy C. Hawkinson, a nephew of the defendant, J. A. Hawkinson, in 1925 (during the Florida boom), purchased a tract of land in Dade county, Fla., and assumed the payment of three purchase money notes, two for $9,762 each, and one for $9,761, owned by the complainant company and secured by the first mortgage on said land. There are several other mortgages on the property.

The three notes were dated June 9, 1925, and due in one, two, and three years, respectively, with interest at 8 per cent. (the legal rate in Florida) payable semiannually.

The first note fell due on June 9, 1926, at which time Roy Hawkinson failed to pay the note and the semiannual interest on the whole indebtedness.

On June 17th J. A. Hawkinson and Alexander Murdock, comptroller of the fruit company, had a meeting in Chicago to discuss the matter, and agreed upon an extension of the time for the payment of the note. On the same date J. A. Hawkinson wrote a letter to Murdock confirming this agreement. The letter stated that, if the fruit company would extend the payment of the note for $9,762 to December 9, 1926, Roy Hawkinson would pay all interest within ten days; and that if the fruit company would further agree that in the event Roy C. Hawkinson should on December 9, 1926, request a further extension of the note to June 9, 1927, it would grant such extension upon the payment by Roy C. Hawkinson of all interest due together with the sum of $2,500, which should be

applied on the principal of the note, J. A. Hawkinson would personally guarantee the payment of said $2,500.

This part of the letter read as follows:

"If the American Fruit Growers, Inc., will extend the payment of the past due principal payment which was payable June 9, 1926 amounting to $9,762.00 for a period of six months to December 9, 1926, Roy C. Hawkinson will pay to the American Fruit Growers, Inc., within the next ten days the past due interest amounting to $1,171.50. The American Fruit Growers, Inc., are to further agree that in the event that Roy C. Hawkinson requests them to they will on December 9, 1926 further extend the payment of the principal payment which was due on June 9, 1926, up to June 9, 1927 upon the payment by said Roy C. Hawkinson of the interest due on December 9, 1926 amounting to $1,171.50 together with the sum of $2,500.00, which said $2,500.00 is to be applied against the principal payment due June 9, 1926.

"In the event that an extension of the principal payment is requested on December 9, 1926, I will personally guarantee the payment of the $2,500.00 called for."

The letter was signed by J. A. Hawkinson. The fruit company wrote on the letter: "Accepted: American Fruit Growers, Inc., By William H. Baggs, President . . ." and returned it to Hawkinson.

On June 30, 1926, J. A. Hawkinson mailed the fruit company his check for the interest due on June 9, 1926, amounting to $1,193, for the extension of the note to December 9, 1926.

On July 26, 1926, Murdock wrote the following letter to Hawkinson, inclosing a contract prepared by the company's attorney:

"In connection with the extension of the Royal Palm mortgage our attorney prefers the forms submitted herewith in triplicate signed by yourself and your nephew then by us. This does not seem to have anything in it which was not in your letter to me except that this takes three pages and ours only took one. I assume therefore that you will have no objection to signing this in order to conform with his wishes and would prefer to have you sign it and have your nephew sign it and we will sign it and return you two copies.

"I sent you the other extension on my own responsibility and I hope you will see your way to sign this so as not to embarrass us with our legal department."

This contract was dated June 9, but was executed the latter part of July (after July 26) or first part of August.

This agreement is substantially the same as that set out in Hawkinson's letter of June 17th, with this exception: The consideration for the extension of the note to December 9, 1926, is J. A. Hawkinson's agreement to pay said note of $9,762 and interest to that date on all three notes.

The provisions of the contract as to payments are as follows:

"Now therefore, it is agreed:

"First The interest on said mortgage indebtedness to June 2, 1926, in the sum of Eleven Hundred Ninety Three Dollars ($1,193.00) shall be paid on or before June 30, 1926.

"Second The time of payment of said first mentioned purchase money note maturing this day shall be extended to December 9, 1926.

"Third Said purchase money note in the sum of Ninety-seven Hundred Sixty-two Dollars ($9,762.00) shall be paid on or before December 9, 1926, with interest on all deferred payments under said purchase money mortgage, or in default of such payment there shall be paid to AFG on or before December 9, 1926, the sum of Twenty-five Hundred Dollars ($2,500.00) on the principal of said note, together with interest on the whole of said deferred payments.

"Fourth On payment of Twenty-five Hundred Dollars ($2,500.00) and interest as aforesaid on said purchase money notes, AFG will extend the time of payment of the balance of said note to June 9, 1927.

"Fifth None of the terms of any of said notes or of said purchase money mortgage shall be or be deemed to be affected or modified in any way by the terms of this agreement or anything done pursuant hereto, except as herein expressly provided with reference to the extension of time of payment.

Sixth The Surety, J. A. Hawkinson, binds himself hereby as surety for the payment by or for account of said Roy Hawkinson to AFG on or before December 9, 1926, of either the full amount of said purchase money note hereby extended to that date and interest to that date on all deferred payments under said purchase money mortgage, or, in case a further six months extension be then asked by said Roy Hawkinson, the sum of Twenty-five Hundred Dollars ($2,500.00) on said note together with full interest as aforesaid."

J. A. Hawkinson and Roy C. Hawkinson executed this contract and returned it to the fruit company.

On December 9, 1926, Roy Hawkinson did not request an extension of the note, and he did not pay anything on the principal or interest.

The fruit company wrote several letters to J. A. Hawkinson demanding payment under his contract. On July 21, 1927, J. A. Hawkinson's attorney, E. M. O'Bryan, wrote the attorney for the fruit company as follows:

". . . In glancing over the original agreement, I find that Mr. John A. Hawkinson's guarantee was predicated upon the exercise of an option for a further extension, which was never exercised.

"In view of the circumstances, I do not see where you have any claim at all upon Mr. John A. Hawkinson."

On December 7, 1929, the fruit company filed its original bill in this cause and sued on the last contract, dated June 9, 1926, and prayed for a decree against J. A. Hawkinson for $9,762, with interest thereon at 8 per cent. from June 9, 1926, and interest on the two other notes, one for $9,762 and one for $9,761, from June 9, 1926.

The defendant, J. A. Hawkinson, filed his answer alleging that there was no consideration for the contract sued on and that he was not indebted to the complainant for any sum. He then filed his cross-bill alleging that the true agreement of the parties was the letter, signed by him, dated June 17, 1926, which was accepted by the fruit company prior to the execution of the contract sued on; that the second contract (the contract sued on) increased his obligation fourfold over what it was in the first agreement, without any consideration; that Roy Hawkinson did not ask for an extension, under the first contract, of the note after December 9, 1926, and he is not indebted to the complainant. The cross-bill prayed that said second contract be canceled.

The complainant fruit company filed an answer to the cross-bill alleging that the contract first made did not contain the agreement of the parties; that it was rejected and a new or substitute agreement executed, which is the instrument sued on.

The chancellor found that in the contract of June 17, 1926, J. A. Hawkinson obligated himself to pay to the complainant the sum of $2,500 if Roy C. Hawkinson requested a further extension on December 9, 1926. "This is the only sufficient consideration that moved to the execution of this instrument whereby Roy C. Hawkinson was given an extension of six months on the note due June 9, 1926, and without which the instrument would not have been executed, and it is the only obligation assumed in said instrument by the surety, J. A. Hawkinson. The complainant had the legal right to the payment of the interest due it by Roy C. Hawkinson, and receiving it after the interest became in default would be no consideration for extending the payment of the note, but, as stated, the undertaking of Roy C. Hawkinson to pay $2,500.00 on the principal of the note extended, and the agreement of the complainant to make this extension should Roy C. Hawkinson request it, and the personal guarantee of the payment of the $2,500.00 by J. A. Hawkinson, surety, did constitute a sufficient consideration for the extension of the note, and thereby make the instrument dated June 17, 1926, and signed by J. A. Hawkinson and the complainant, valid and enforceable.

"This consideration is not affected by the fact that the proof

reveals that no request was made by Roy C. Hawkinson on December 9, 1926, for an extension of the note.''

He further found that, when the second contract was entered into (July 26, 1926, or after), the first contract had been executed by the payment of the interest and the extension of the note to December 9, 1926; that by this second contract J. A. Hawkinson bound himself to pay on December 9, 1926, either $9,762 and interest on the whole indebtedness, or, in case a further six months' extension was asked for by Roy C. Hawkinson, the sum of $2,500 on the note due on that date, together with interest; that, therefore, there was no consideration on the part of J. A. Hawkinson for this agreement to pay the full amount of the note, $9,762, and interest on the whole indebtedness, because the extension of this note and the payment of the interest due on June 9, 1926, had already taken place, and a past consideration will not be sufficient consideration for such a promise. He held that the first contract was a valid and enforecable agreement, and that the second contract was without consideration as to J. A. Hawkinson and was not enforceable against him. He decreed that the original bill be dismissed and that said contract set up by the complainant be canceled and the complainant be enjoined from setting up any claim under it against the defendant.

The complainant excepted to said decree and appealed to this court and has assigned a number of errors, but the determinative questions in the case are:

(1) Did the second contract supersede the first contract?

(2) Can the complainant recover under the first contract?

1 and 2. The complainant contends that this second contract superseded the first contract, being a subsequent contract, completely covering the same subject matter, and made with the same parties, but containing terms inconsistent with the former contract, so that the two cannot stand together.

The second contract was of later date, contained the same subject matter, was signed by all the parties, contained terms inconsistent with the former contract, was sent to the defendant to be substituted for the first contract, and was accepted. The legal effect of the second contract, if it had been supported by a consideration, would have been to rescind and supersede the former agreement, and to make the later one the only contract between the parties. 13 C. J., 603, sec. 628; Housekeeper Publishing Co. v. Swift (C. C. A.), 97 F., 290; Homire v. Stratton, etc., Co., 157 Ky., 822, 164 S. W., 67; 3 Williston on Contracts, 3145, sec. 1826. But there was no consideration for this second contract; the second contract increases the obligation of J. A. Hawkinson without any consideration moving to him or to his nephew, Roy Hawkinson.

The parties to an executory contract may, by a subsequent agree-

ment founded on a sufficient consideration, vary such agreement, and thus make a new or different contract. Bryan v. Hunt, 36 Tenn. (4 Sneed), 543, 70 Am. Dec., 262.

A consideration is necessary to support the new agreement. 13 C. J., 592, sec. 607; 6 R. C. L., 916, 917, sec. 301; Gilman v. Kibler, 24 Tenn. (5 Humph.), 19, 24; Bryan v. Hunt, supra; Williston on Contracts, 3145, sec. 1826.

"But the subsequent agreement must have sufficient consideration. Therefore if the undertaking by one party is simply to perform the whole or part of what he promised in the original contract, it will not support a promise by the other party to perform what he had previously agreed and something more. Nor (what is substantially the same thing) can an existing contract be altered by mutual assent by an agreement merely to give one party a right or privilege, or subject the other party to a burden which he did not have previously." 3 Williston on Contracts, 3145, 3146, sec. 1826.

To increase the liability of J. A. Hawkinson about $11,000 was such a modification of the first contract as to make a new contract. 6 R. C. L., 916, sec. 301.

■■ The complainant contends that there was no consideration in the first contract for the extension of the note for six months from June 9, 1926; that in the second contract the consideration for this six months' extension was J. A. Hawkinson's promise to pay the note, $9,762, and interest on the whole indebtedness, $1,171.40, on December 9, 1926, therefore there was a consideration for this promise in the second contract.

Roy C. Hawkins was bound to pay the interest due on June 9, 1926, and the fruit company had a legal right to the payment. Sully v. Childress, 106 Tenn., 109 60 S. W., 499, 82 Am. St. Rep. 875; 13 C. J. 354, sec. 209; 1 Williston on Contracts, 257, sec. 120. And his promise to pay the interest, and the actual payment of the same, was no consideration for the first six months' extension. But we hold that the consideration for this first six months' extension, from June 9, 1926, to December 9, 1926, was not the promise to pay the past-due interest. The promise of J. A. Hawkinson to pay $2,500 if an extension was requested on December 9, 1926, by Roy Hawkinson, was a consideration for the first extension of six months and also the promise to extend the note for another six months if requested. There would have been no use to agree about the second six months' extension without the extension of the first six months, as it depended upon the first extension. Had not the first extension been granted the second extension could not have been made, hence both extensions were parts of the same contract.

■■ It is true that J. A. Hawkinson's liability was contingent and dependent upon Roy Hawkinson's request for the second exten-

sion; but "the fact that the promise given for a promise is dependent upon a condition does not affect its validity as consideration." 13 C. J., 330, sec. 178; Seward v. Mitchell, 41 Tenn. (1 Cold.), 87; 1 Williston on Contracts, 231, sec. 112, pp. 255, 256.

It results that we hold that the first contract was supported by a sufficient consideration and was a valid and binding contract; that the second contract, being without consideration, was not substituted for it; that under the first contract there can be no recovery against J. A. Hawkinson in favor of the American Fruit Growers, Inc.

 3. A great deal of testimony was taken, unobjected to, which attempted to show that the first contract did not contain the agreement of the parties. This testimony should not have been admitted. Where a contract has been reduced to writing, and is complete in its terms and free from ambiguity, oral evidence of what passed between the parties, either before the written instrument was made or during the time it was in a state of preparation, is not admissible to add to or subtract from, or in any manner to vary or qualify, the written contract. The written instrument must be considered as containing the true agreement between the parties, and as furnishing the best evidence of their final intentions and acts. Bryan v. Hunt, supra; 13 C. J. 597, 598, sec. 616.

There was no contention that there was any fraud, accident, or mistake in the execution of the first contract.

However, after reading all the testimony and the exhibits, we are of the opinion that the first contract contained the agreement of the parties, and the second contract was prepared by the complainant's lawyers and was attempted to be substituted for the first, but there was no consideration. Both Hawkinson and O'Bryan testified that the oral agreement of all the parties, in conference, was as set out in J. A. Hawkinson's letter of June 17th. Murdock and Braggs testified that the agreement of the parties was as expressed in the last contract; that they thought Hawkinson's letter of June 17th correctly stated it, but when the letter was submitted to the legal department it was found that it did not express the agreement of the parties. But there is in the record the following correspondence between Murdock and McCready, which shows that the agreement of Murdock and J. A. Hawkinson at Chicago on June 17th was correctly set out in Hawkinson's letter of June 17th and not in the second contract:

McCready to Murdock:

"The final paragraph on the first page is to the effect that Roy C. Hawkinson will pay the interest within ten days after the extension is granted to J. A. Hawkinson but does not guarantee that he will do so. Whatever was intended, the fact is that the whole guaranty would fall unless AFG made an extension for six months and then looked to Roy C. Hawkinson only to pay the interest within ten days. From

the tone of the whole instrument I assume that J. A. Hawkinson would agree to have Roy C. Hawkinson pay the $1,151.50 of interest in consideration of a six months' extension, and apparently that is all that J. A. Hawkinson intends to bind himself to do, with the exception that he will see that we get $2,500, and another installment of interest if Roy C. Hawkinson asks for another six months' extension on December 9th, which we would be bound to give on those terms if he asks for it.''

Murdock to McCready:

''Referring to your letter of July 1st, the agreement in the final paragraph of the letter called for the payment of interest within ten days from June 17th or June 27th. The amount of interest was $1,193.00 instead of $1,171.50 which interest has now been paid.

''The intention was for J. A. Hawkinson to see that the interest was paid, which he has done, and guarantee the payment of $2,500 and another installment of interest if a further extension of six months were asked.

''Will you therefore draw up an agreement such as you desire along this line which I have no doubt Mr. Hawkinson will be very glad to sign?''

McCready to Murdock:

''Answering your letter of July 2nd, I would like to know whether J. A. Hawkinson agrees to do anything in consideration of the first six months' extension. If not, what is the object in drawing up any extension agreement? It will be a different proposition if his agreement is that at the end of the first six months' extension they will either pay the mortgage or pay $2,500 and interest on receipt of another six months' extension.''

Murdock to McCready:

''Referring to your letter of July 7th, Mr. Roy Hawkinson, through his uncle J. A. Hawkinson, originally asked for an extension of time on the mortgage of one year without payment of anything except the interest.

''We talked him out of this and J. A. Hawkinson agreed that if an extension were granted for six months and they were unable to pay the entire amount due with interest that an extension for another six months would be asked for. In the event that the second extension were asked for, J. A. Hawkinson would guarantee the payment at that time of $2,500, on the note due June 7th and the six months interest.

''The consideration of the first six months extension was that the interest would be paid which was due on June 7th and that J. A. Hawkinson would guarantee a payment on the principal of $2,500, and interest at the end of six months.''

However, we have held that the first contract is the real agreement

between the parties and that the second contract was without consideration.

■ 4. There is nothing in the complainant's contention that J. A. Hawkinson is estopped to set up the contract of June 17, 1926.

Murdock and Baggs testified that, if the first extension, on June 9, 1926, had not been made, they might have realized the amount of the three notes out of the land, but that by December 9, 1926, land values had become so deflated, due to the public's finding out that the Florida boom was over (it had actually been over several months before this), they could have realized very little. If the land decreased in value while a contract between the parties was in force, extending the time, there can be no estoppel.

It appears that the mortgage has not yet been foreclosed.

The complainant waited three years before it filed its bill in this cause.

Under the contract the complainant could not foreclose until December 9, 1926, and the defendant did nothing to mislead the complainant in any manner.

■ 5. J. A. Hawkinson contends that he did not read this second contract and did not know that the terms were different. This contention could avail him nothing, as a party to a contract is presumed to have read it. 53 C. J. 975, sec. 113.

However, this is immaterial, as we have held that this second contract is invalid as it was not supported by a new consideration.

It results that all the assignments of errors must be overruled, and the decree dismissing the bill must be affirmed. The costs of the cause including the costs of the appeal are adjudged against the complainant and the sureties on its prosecution and appeal bonds.

Faw, P. J., and DeWitt, J., concur.