**WESTERN SURETY COMPANY,**
Plaintiff-Appellant,

v.

**William C. WILSON, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 25, 1972.

Certiorari Denied by Supreme Court
Aug. 21, 1972.

Robert P. Thomas, of Boult, Cummings, Conners & Berry, Nashville, for plaintiff-appellant.

William J. Harbison, of Trabue, Minick, Sturdivant & Harbison, Nashville, for defendant-appellee.

OPINION

TODD, Judge.

The plaintiff, Western Surety Company, has appealed from a non-jury judgment dismissing its suit against the defendant, William C. Wilson, for premiums due upon an administrator's surety bond.

The facts are either stipulated or uncontroverted. On June 13, 1961, defendant

signed an application requesting plaintiff to become surety on a $50,000.00 administrator's bond. Said application is headed: "Name of Applicant *William C. Wilson*" and contains the following provision:

"The undersigned certify that the answers given to the foregoing interrogatories, and the information and statements contained in this application are true, and *the undersigned* jointly and severally in consideration of the Company becoming surety, or executing or guaranteeing any bond or bonds or undertaking or undertakings, *do* for value received *hereby* covenant, promise and *agree to pay the Company the usual annual premium*; and we each jointly and severally agree to indemnify and keep indemnified the said Company from and against any liability, and all loss, cost, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said Company shall at any time sustain or incur, for or by reason, or in consequence of said Company having become surety or entering into such bond or bonds, or undertaking or undertakings." (emphasis supplied)

Said application is signed: "William C. Wilson."

Plaintiff became surety on defendant's administrator's bond, and letters of administration were issued to defendant for the administration of the estate of Hazel Hallum, deceased. Said estate remains unsettled and premiums of $200.00 per year for four years are now due and unpaid. A portion of the estate has been distributed, but final distribution is being delayed awaiting rulings upon certain disputed matters.

Defendant testified that all previous payments of premiums to plaintiff had been made out of funds of the estate, that he had never paid any such premium out of his personal funds, nor had he received any request or demand to do so until the filing of this suit. As to his personal obligation, defendant testified:

"A. I signed the application. I'm reluctant to say that I did not read all of the small print in it. However, there was no binding upon me at that time for any personal liability and neither was it discussed."

The estate is solvent. No suit has been filed by plaintiff against defendant as administrator of the estate.

Defendant points out that plaintiff is entitled to priority of payment out of assets of the estate, citing T.C.A., § 30–520, as follows:

"*30–520. Priority of claims—Payment —Contested or unmatured claims.*—All claims or demands against the estate of any deceased person shall be divided into the following classifications, which shall have priority in the order shown:

First: Costs of administration, including, but not limited to, premiums on the fiduciary bonds and reasonable compensations to the personal representative and his counsel." (Emphasis supplied) (other portions of the statute are immaterial)

As conceded in defendant's brief, the administrator has not accorded such priority to plaintiff, but has distributed available funds to heirs; and the estate is presently without liquid assets to pay plaintiff's claim. Defendant's brief also concedes that the heirs are solvent and "could certainly be required to refund to the estate sufficient assets to pay the premium at the appropriate time."

Neither record nor briefs contain any suggestion as to the "appropriate time" for recapture from heirs of excess distribution made to them in order to pay plaintiff's admittedly prior claim. It would appear that, after four years of accumulation of unpaid premiums, that "appropriate time" has arrived and passed.

The principal proposition upon which defendant relies for affirmance is that the parties never intended that defendant should be liable personally for the bond premiums, but rather that they should be paid only by the administrator. In support of this proposition appellee points out that no personal financial information about ap-

plicant was required by plaintiff; that the plaintiff invariably billed defendant as administrator and not personally; and that all payments were made by him in his capacity as administrator and not out of his personal funds.

Defendant insists that the controlling rule in this appeal is that:

"The interpretation of a contract by the parties themselves, as shown by their actions, will be adopted by the court."

Defendant cites Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, 181 Tenn. 453, 181 S.W.2d 625 (1944), wherein an insurance company sued the sureties on the bond of its local agent for premiums on policies written by the local agent. The bond assured payment to the insurance company of *moneys collected or received* by the agent. This Court held that the emphasized words covered only money actually collected by the agent, and not money due and uncollected. In said opinion, the Supreme Court said:

"The Court, placing itself in the position of the contracting parties, considers all the facts and circumstances so as to ascertain what the parties intended, the primary purpose being to ascertain just what was within the contemplation of the parties." 181 Tenn., p. 468, 181 S. W.2d, p. 631

however, the Supreme Court also said:

"We have here quite evidently and plainly a construction by both parties to this contract contained in the pleadings. It is true that this rule of practical construction is recognized as applying to cases only 'where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, ' - - -" (Citing authorities) 181 Tenn., p. 467, 181 S.W.2d, p. 631

■ The undertaking of defendant in the application for bond, in the case at bar, was unequivocal and unambiguous. In said application, "The undersigned (William C. Wilson) . . do . . hereby - - - agree to pay the Company the usual annual premium - - -." The language used is neither indefinite nor ambiguous, hence the "rule of practical construction" does not apply.

■ In reality, the defense is that defendant intended to assume the obligation as administrator, and not as an individual. This theory is hardly tenable for the reason that, at the time the application was signed, defendant had no authority to act in his representative capacity, indeed he was not clothed with said authority until later.

In Jones v. Dean, 3 Tenn.Cas. (Shannon) 487, (1875), William Farris, captain of a steamboat owned by R. S. Jones, disclosed that he was acting for the owner but entered into a written agreement concerning the steamboat which began:

"This agreement made and entered into the 21st day of November, 1864, between Nathaniel W. Dean, of the city of Madison, state of Wisconsin, of the first part, and William Farris, of the city of Memphis, State of Tennessee, of the second part, witnesseth, - - -" 3 Tenn. Cases (Shannon), pp. 488, 489

and said agreement concluded:

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

(Signed) N. W. Dean, (Seal)

Wm. Farris, (Seal)"

When Dean sued Jones, the owner, Dean, was permitted to offer parol evidence that Farris executed the agreement as representative of Jones and not individually. The Supreme Court reversed and said:

"The contract does not purport to bind Jones; on the contrary, it clearly shows upon the very face of the instrument that it was the personal contract and in-

dividual undertaking and agreement of Farris, binding him alone for the payment of the services to be performed by Dean. - - - There is no ambiguity in the terms and stipulations of the instrument. It was entered into by Dean after a full disclosure of Jones' connection with the boat and cargo, and having thereby accepted the personal undertaking of Farris for the payment of the consideration he was to receive for his services, he can, upon no legal principle, be allowed to resort to parol evidence to show that he intended by such contract to bind Jones instead of Farris. Where verbal contracts are made with agents the inquiry as to whom credit is given is a question of fact, but it is 'matter of law where it depends upon the true construction of the terms of a written instrument,' as announced by this court in Ahrens v. Cobb, [28 Tenn. 643] 9 Hum., p. 645." 3 Tenn.Cases (Shannon), p. 492

Appellant cites State ex rel. Dahlberg v. American Surety Co., 173 Tenn. 505, 121 S.W.2d 546 (1938) wherein B. I. Dahlberg sued the surety on the bond of an administratrix for professional services rendered to the administratrix in regard to tax claims against the estate. The Supreme Court sustained a demurrer to the bill (thereby dismissing the suit) and said:

"(2) Administrators in discharge of their duty may do many things for which the estate would be ultimately liable, but that liability can be based as a charge against the estate only by presentation of accounts on behalf of the administrator in which he seeks and obtains credit for claims created by him against the estate in discharge of his duties. It is said by some text writers that it is doubtful if an instance can be conceived in which the administrator can be sued as such upon a contract entered into by him and judgment rendered payable out of the assets of the estate, where no liability existed against the decedent in his lifetime. And so, until the charge for services rendered the administratrix has been ap-

proved and allowed as part of the expense of administration, it cannot become an obligation of the surety on the bond." 173 Tenn., pp. 508, 509, 121 S. W.2d pp. 546, 547.

The facts of *Dahlberg* present a much stronger case than those of the present case because in *Dahlberg* the agreement for services was evidently made *after* the administratrix had assumed the administration of the estate, and there was no evidence of a personal undertaking on her part; whereas, in the present case, the agreement was signed individually *before* the administrator was appointed.

■ The status and relationship of an administrator to the estate he administers is a peculiar one. He is the *personal representative* succeeding generally to the position of the deceased in respect to suing and being sued in respect to the affairs of the deceased as they occurred or existed *prior to the death of deceased*. Claims for services to the estate, for which the administrator contracts *after death of the deceased*, are in a separate class from claims arising during the lifetime of deceased. The law places upon the administrator the onus of procuring necessary services on his own credit and of protecting himself from loss by seeing that such services can be and are paid for out of the assets of the estate and that he is allowed credit therefor in his settlement. In short, the administrator has a personal obligation for services rendered to him as administrator, but he is permitted to discharge his personal obligation by making payment out of the assets of the estate.

In the present case, a most difficult situation has been permitted to come into being. The administrator undoubtedly distributed the liquid assets of the estate in the good faith belief that the non-liquid assets would be liquidated promptly to enable the payment of future expenses, such as bond premiums. To his disappointment, litigation and delay in decision have prevented the prompt completion of his duties.

It is remarkable that, after all, or practically all of the personalty had been distributed, the administrator's bond was continued in effect from year to year for its former, full amount. It is also remarkable that the administrator has not called upon the distributees for a refund of the distribution sufficient to pay the claim of plaintiff.

In any event, the defendant is unquestionably liable, personally, for payment of plaintiff's claim; and, unquestionably, defendant is entitled to reimbursement from the estate for necessary expenditures made by him, personally, in the administration of the estate.

Accordingly, the judgment of the Trial Judge is reversed and a judgment will be entered in this Court in favor of plaintiff-appellant and against defendant-appellee for $800.00 and all costs.

Reversed and rendered.

SHRIVER, P. J., and PURYEAR, J., concur.