**ESTATE OF Benjamin R. HORDESKI, Plaintiff–Appellee,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF RUSSELL COUNTY, ALABAMA, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 5, 1991.

Application for Permission to Appeal Denied by Supreme Court Feb. 18, 1992.

Gregory C. Logue, Knoxville, for defendant-appellant.

Ben D. Brabson, Jr., Sevierville, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

In this suit, growing out of the administration of the Estate of Benjamin R. Hordeski, who died on August 7, 1986, the Estate[1] sues First Federal Savings and Loan Association of Russell County, Alabama, seeking to recover the proceeds of a certificate of deposit owned by Mr. Hordeski, which was assigned as security for a loan by the Association. The suit sought recovery on two theories—first that the Association had practiced a fraud on Mr. Hordeski, and the second that there was no consideration for the second assignment.

The Trial Court directed a verdict at the close of all the proof in favor of the Association as to the fraud issue and submitted to the jury the question of consideration. The jury found in favor of the Estate, resulting in this appeal.

By its issues on appeal the Association contends the Court should have also directed a verdict in its favor on the issue of consideration, that the Trial Court did not properly instruct the jury on the issue of consideration, and that the Trial Court should have instructed the jury on the issue of conditional delivery of the first collateral assignment.

The genesis for this lawsuit was a trip to Gatlinburg in March 1985 by Eddie Zeal, William Bagley, III, President and Senior Vice–President, respectively, of the Association, and Thomas Wahlin, mortgage broker, who was Vice–President of Federal Guaranty Funding Corporation.[2] The purpose of this trip was to evaluate certain properties the Association was interested in financing. During the visit Mr. Bagley pointed out Buckberry Chalets to Mr. Wahlin as the type of property the Association was interested in financing.

Later, after Mr. Wahlin returned to Florida, a friend of his, John Rossi, approached him regarding a time-share operation involving Buckberry Chalets. Thereafter, Mr. Wahlin, along with his friend, Mr. Rossi, and a third-party, James Shumaker, approached Mr. Hordeski concerning the purchase of Buckberry Chalets, which was owned by Alexis Marketing, Inc., which in turn was owned one hundred percent by Mr. Hordeski.

After some negotiations Mr. Hordeski and Messrs. Rossi and Shumaker agreed upon a purchase price of $420,000, which was borrowed from the Association and secured in part by a deed of trust on Buckberry Chalets. The indebtedness was due in one year with interest payable monthly beginning December 1, 1985.

The transaction was closed on November 6, 1985, in the law office of Brabson & Kite in Sevierville. Present at this time were Mr. Hordeski, Mr. Shumaker, Mr. Rossi, Mr. Wahlin, James Turner, friend of Ben, William Myers, Jr., attorney for the Association, and Mr. Brabson, attorney for Ben.

Mr. Hordeski received, as a result of the sale, approximately $201,000 in cash, a note on Alexis in the amount of $100,000, secured by a second deed of trust, and a certificate of deposit in the amount of $100,000. The remainder of the purchase price was used to pay various fees and expenses incurred by Mr. Hordeski relative to the sale. The Association retained from the proceeds of the loan approximately $80,600 as an interest reserve and furniture allowance. The proof shows that the interest reserve was sufficient to pay interest on the loan for a period of six months.

In addition to the requirement of the trust deed, the Association required a certificate of deposit in the amount of $100,000 as further security for the loan. When the purchasers were unable to meet this requirement Mr. Hordeski, apparently as a result of his desire to sell the property at the agreed price, consented to supply the

---

1. The personal representative of an estate succeeds generally to the position of the deceased in respect to suing and being sued. *Western Surety Company v. Wilson*, 484 S.W.2d 45 (Tenn. App.1972). However, no question is made as to the propriety of this suit being brought in the name of the Estate, and we will take no further notice of this irregularity.

2. The predicate for the fraud charge was the fact that a wholly-owned subsidiary of the Association owned 50 percent of the stock in Federal Guaranty Funding Corporation.

certificate of deposit and execute an assignment to further secure the loan. It appears, however, that the assignment prepared by the Association's counsel was changed at Mr. Hordeski's insistence to add the following sentence: "This agreement terminates upon maturity of the certificate of deposit." The certificate of deposit was for six months and matured on May 6, 1986. The assignment also provided that interest on the certificate of deposit would be payable to the Association, although all parties agreed that the interest should have been payable to Mr. Hordeski.

When counsel for the Association objected to the sentence above quoted Mr. Hordeski represented that he had talked to Mr. Bagley and they had agreed to limit the collateral assignment to the maturity date of the certificate of deposit. Counsel for the Association attempted to contact Mr. Bagley by telephone but was unable to do so, and thereupon, according to him, conditionally accepted the collateral assignment.

Thereafter, when counsel for the Association was able to reach Mr. Bagley, he discovered that the collateral assignment was not to be so limited and was advised that Mr. Bagley would contact Mr. Hordeski and then be back in touch with counsel. Thereafter, counsel for the Association received a call from Mr. Bagley telling him to re-draft the collateral assignment and send it to Mr. Hordeski. Counsel for the Association complied with the directive and sent the collateral assignment directly to Mr. Hordeski, but did not send the cover letter or a copy of the collateral assignment to Mr. Hordeski's counsel. On December 3, 1985, Mr. Hordeski executed the second collateral assignment after striking the language making interest payable to the Association, which was in accordance with the original agreement, and adding a clause relative to disbursement of future interest, as well as that which had accrued.

No payments were ever made on the loan other than from funds retained for payment of interest, and when the borrowers defaulted on the loan the real estate was foreclosed in April 1987 and purchased by the Association.

As already noted, at the conclusion of the proof, the Trial Judge directed a verdict for the Association as to its theory of fraud, but did submit to the jury the question of whether there was consideration for the second collateral assignment.

The Tennessee Pattern Instruction—Civil § 13.11, with appropriate citations,[3] defines "consideration" as follows:

> In order for a contract to be legally binding, there must be what is called, "consideration." Stated most simply, there must be something in return for the promise or promises made. But it does not have to be money. It may be a promise for a promise. It is not necessary that something concrete and tangible move from one to the other party to the contract in order for there to be consideration. Any benefit to one or detriment to the other may be enough consideration.

There is an older case, *Applewhite v. Allen,* 27 Tenn. 697 (1848), which states: "what is a good and sufficient consideration is a question of law; whether it has been paid or not is a question of fact."

■ While we have not been able to find this assertion cited with approval in any later Tennessee cases,[4] we think without question where the proof is undisputed, as here, and where, also as here, no conflicting inferences may be drawn, the question of adequate consideration is an issue of law.

It is undisputed that in the first collateral assignment as drawn, the Association was to receive the interest, while in the second Mr. Hordeski was to receive the interest. Counsel for the Estate argues that because it was the understanding of the parties from the beginning that Mr. Hordeski would receive the interest, no

---

**3.** *Brown Oil Co. v. Johnson,* 689 S.W.2d 149 (Tenn.1985); *Johnson v. Central Nat. Ins. Co.,* 210 Tenn. 24, 356 S.W.2d 277 (1962); *Robinson v. Kenney,* 526 S.W.2d 115 (Tenn.App.1973).

**4.** A United States District Court case cites *Applewhite* with apparent approval. *Greer v. United States,* 269 F.Supp. 801 (E.D.Tenn.1967).

benefit was conferred or detriment incurred by execution of the second instrument. We will assume that counsel is correct in his assertion and that the Parol Evidence Rule would not prevent such a determination despite case law which states that the Parol Evidence Rule "is not a rule of evidence merely, but is a rule of substantive law and no exception or assignment of error is necessary to ensure its application." *Maddox v. Webb Construction Co.*, 562 S.W.2d 198 (Tenn.1978).

Upon applying the Pattern Instruction definition of "consideration" to the facts of this case, it would appear that the second collateral assignment was supported by consideration in that Mr. Hordeski incurred a detriment by his guaranty being extended to the term of the loan and the Association received a benefit by being secured for the same period. However, the case of *American Fruit Growers v. Hawkinson*, 21 Tenn.App. 127, 106 S.W.2d 564 (Tenn. App.1937), casts doubt on this analysis.

In that case, which also dealt with suretyship, the Defendant had signed an agreement to be under certain conditions surety for his nephew's indebtedness in the amount of $2500. Thereafter, another agreement was prepared which increased his liability without any benefit moving to him or to his nephew. The Court thereupon found the second agreement lacked consideration, and in doing so stated the following (106 S.W.2d at page 568):

A consideration is necessary to support the new agreement. 13 C.J. 592, § 607; 6 R.C.L. 916, 917, § 301; *Gilman v. Kibler*, 24 Tenn. (5 Humph.) 19, 24; *Bryan v. Hunt*, supra [36 Tenn. (4 Sneed) 543, 70 Am.Dec. 262]; 3 Williston on Contracts, 3145 § 1826.

"But the subsequent agreement must have sufficient consideration. Therefore if the undertaking by one party is simply to perform the whole or part of what he promised in the original contract, it will not support a promise by the other party to perform what he had previously agreed and something more. Nor (what is substantially the same thing) can an existing contract be altered by mutual assent by an agreement merely to give one party a right or privilege, or subject the other party to a burden which he did not have previously." 3 Williston on Contracts, 3145, 3146, § 1826.

■ Even if the ruling of *American Fruit* remains good law, we believe the Association nevertheless was entitled to a directed verdict. We reach this conclusion because of the rule of law that in a subsequent agreement which corrects errors in the previous one, the original consideration suffices for the new agreement. *Moore v. Williamson*, 213 Ala. 274, 104 So. 645 (1925).

■ It is undisputed in the present record that the interest accruing on the certificate of deposit was to be payable to Mr. Hordeski and not to the Association. Thus, the consideration for the original agreement was sufficient to sustain the subsequent one.

■ In light of our disposition of issue number one, it is unnecessary that we discuss issue two. As to issue three, the proof is conflicting as to whether the acceptance of the first collateral assignment was conditional. Mr. Myers testified that acceptance was subject to his confirming Mr. Bagley's approval. On the other hand, Mr. Turner testified after a heated discussion it was agreed that the clause relative to termination of the assignment on maturity of the certificate of deposit would be inserted. We note parenthetically it would seem incredible that the Association would agree to such a provision when sufficient funds had been retained from the loan to pay interest on it to the maturity of the certificate of deposit. To put it another way, acceptance of the language inserted would be tantamount to the Association waiving its requirement that the loan be further secured by a $100,000 certificate of deposit.

Moreover, corroborative of Mr. Myers' testimony is the fact that the certificate of deposit was not issued to Mr. Hordeski until December 10, ten days after he signed the second collateral assignment.

In light of the foregoing, we are not impressed with the Estate's argument that failure to give the instruction was harmless error. Because there is a disputed issue as to whether the delivery was conditional, in the event this Court is reversed as to issue one the cause is remanded for a new trial with appropriate instructions to the jury relative to a conditional acceptance of the first collateral assignment.

For the foregoing reasons the Trial Court is reversed and the cause dismissed. Costs of appeal, as well as costs below, are adjudged against the Estate.

FRANKS and McMURRAY, JJ., concur.