9 F.3d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RESOLUTION TRUST CORP., as Conservator for First Federal
Savings & Loan Association of Russell County,
Alabama, Plaintiff-Appellant,
v.
William C. MYERS, Jr. and Wagner, Myers & Sanger, a
Professional Corporation, Defendants-Appellees.
 No. 92-6143.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1993.
 
 Before: GUY and BATCHELDER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Resolution Trust Corporation ("RTC"), as conservator for the First Federal Savings & Loan Association of Russell County, Alabama ("First Federal")[1] appeals the district court's grant of summary judgment in favor of the defendants-appellees in this legal malpractice action. For the reasons which follow, we REVERSE and REMAND for further proceedings.
 
 
 2
 * First Federal is a federally chartered savings and loan association headquartered in Phenix City, Alabama. Defendant-appellee William C. Myers, Jr. is an attorney practicing in Knoxville, Tennessee. Defendant-appellee Wagner, Myers, and Sanger ("WMS") is a professional corporation and law firm with whom Myers practices. In 1985, First Federal retained Myers and WMS to represent it in connection with the closing of a loan. The loan which First Federal was making was going to Alexis Marketing, a company which was going to use the proceeds to buy a condo project from Benjamin Hordeski. Mr. Hordeski, who was apparently anxious to have the loan go through so that he could sell the property, agreed to pledge a $100,000 certificate of deposit as collateral for repayment of the loan. Myers drafted a collateral assignment to be executed by Hordeski at the loan closing. In accordance with the bank's instructions, the assignment provided that Hordeski's pledge of the certificate of deposit would last through the term of the loan.
 
 
 3
 In November, 1985, Myers attended the closing on the bank's behalf. Hordeski and his attorney, among others, were also present. No other representative or employee of the bank was apparently present, however. At the closing, either Hordeski or some other party told Myers that his client, First Federal, had agreed to change the time period for which the certificate of deposit would be pledged; rather than lasting through the entire term of the loan, the pledge would terminate in approximately six months, or May, 1986, the certificate's maturity date. Although what happened next appears to be disputed, the complaint alleges that according to Myers, he then tried without success to contact First Federal representative William Bagley by phone to verify the purported change in the agreement. The complaint further alleges that according to Myers, who was unable to confirm the modification, he accepted a modified version of the collateral assignment executed by Hordeski "subject to verification by [First Federal] that it had agreed to the modification." First Amended Complaint, p 16. The loan proceeds were then disbursed.
 
 
 4
 Shortly after the closing, Myers spoke with Bagley about the alleged change in the collateral assignment. Bagley indicated that First Federal had not agreed to the revision, and he instructed Myers to obtain Hordeski's signature on an assignment containing the original, agreed-upon terms. Myers then sent the original assignment directly to Hordeski (bypassing Hordeski's counsel), who executed it and returned it to First Federal.
 
 
 5
 Alexis Marketing ultimately defaulted on the loan, and First Federal foreclosed on its deed of trust on the condo project. However, the result was a deficiency. In the meantime, Hordeski had died. First Federal therefore filed a claim against the Hordeski estate for $100,000, the amount of the pledged certificate of deposit. The estate objected to the claim, contending that the second assignment which Hordeski had executed was invalid and that the pledge of the certificate had terminated upon its maturity, in accordance with the terms of the first executed assignment. First Federal and the estate litigated the right to the certificate in Tennessee court. Although the estate prevailed at the trial court level, First Federal obtained a reversal on appeal. Estate of Hordeski v. First Federal Savings & Loan Assn. of Russell County, Alabama, 827 S.W.2d 302 (Tenn.Ct.App.1991), appeal denied, 1992 Tenn. LEXIS 139 (Tenn. Feb. 18, 1992). The result of this litigation was that First Federal was allowed to apply the certificate of deposit to the loan deficiency.
 
 
 6
 First Federal filed this action against Myers and WMS in the district court on January 16, 1990, before the final outcome of the state court action with the Hordeski estate was known. In an amended complaint filed in April, 1992, First Federal asserted state law claims of legal malpractice and breach of an implied contract of indemnity against both defendants, contending that it had been forced to spend over $50,000 in litigation with the Hordeski estate due to Myers' actions at the closing. The defendants moved for summary judgment on both claims, and the district court granted the motion, concluding that Myers was not guilty of negligence and that his actions at the closing did not give rise to the harm First Federal suffered. Regarding First Federal's claim for breach of an implied contract of indemnity, the district court also concluded that in the absence of any actionable malpractice, First Federal had no right to seek indemnification from Myers or WMS for its litigation expenses. First Federal appealed.
 
 II
 
 7
 This court reviews a grant of summary judgment de novo, using the same test applied by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 
 8
 In an action against an attorney for professional negligence under Tennessee law, the plaintiff must prove three things in order to recover: (1) that it employed the defendant; (2) that the defendant neglected a reasonable duty; (3) that damages resulted from the defendant's neglect. Sammons v. Rotroff, 653 S.W.2d 740, 745 (Tenn.Ct.App.), cert. denied, 464 U.S. 860 (1983). The parties do not dispute that First Federal employed Myers and WMS. However, they do dispute whether Myers neglected a reasonable duty. What duty did he neglect? According to First Federal, Myers acted outside the scope of the express authority given him by his client by accepting the modified version of the assignment executed by Hordeski at the loan closing, without first obtaining First Federal's authorization.[2]
 
 
 9
 The defendants contend that Myers only conditionally accepted the modified collateral assignment executed by Hordeski, pending confirmation by First Federal that it had agreed to the shortened pledge period. The defendants argue, therefore, that Myers committed no actionable malpractice. At oral argument, First Federal conceded that if Myers' acceptance of the modified agreement was in fact conditional, his actions would not amount to malpractice. However, First Federal argues that the district court erred in adopting Myers' contention that his acceptance of the modified agreement was conditional, because there was no verified evidence submitted in support of the defendants' summary judgment motion substantiating this contention.
 
 
 10
 We note that First Federal admittedly took the position in the Hordeski litigation that Myers' acceptance of the modified assignment was conditioned upon his client's approval. The district court was undoubtedly aware of this fact, having had before it unverified copies of First Federal's brief filed in the Tennessee Court of Appeals. Hordeski's voluntary execution of a second assignment containing the original, agreed terms would appear to confirm the defendants' position that Myers' acceptance of the first assignment was conditional, and given that Mr. Hordeski is now deceased, he is in no position to swear otherwise. However, First Federal nonetheless argues that in the absence of affidavits or other verified proof that Myers' acceptance was conditional, the district court erred in granting summary judgment in favor of the defendants. First Federal also argues that whether Myers' actions provided the Hordeski estate with a basis for challenging the collateral assignment is a factual question relevant to causation, which must be decided by a jury.
 
 
 11
 We are not prepared to say that First Federal has or will be able to present a case which will necessarily survive a motion for directed verdict under Fed.R.Civ.P. 50(a). See Anderson, 477 U.S. at 250 (summary judgment standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)"). Causation does not become an issue for the jury in the absence of evidence that Myers breached a duty to his client by exceeding his authority, and First Federal has identified no witnesses or other evidence which it will be able to present substantiating its position that Myers' acceptance of the modified assignment was not conditional upon obtaining the approval of his client. However, as the case was presented to the district court on motion by the defendants, First Federal had no obligation to identify or present any such evidence. While a motion for summary judgment may be made under Fed.R.Civ.P. 56(b) by a defending party "with or without supporting affidavits," Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), Rule 56 does require that the moving party discharge his burden by demonstrating that based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," there is an absence of evidence to support the nonmoving party's case. We understand First Federal's position to be that the defendants' allegation as to the conditional nature of the modified assignment was unsupported by any of the evidentiary materials identified in Rule 56, and that therefore it had no duty to come forward with evidence in response to the motion demonstrating that a jury could reasonably find in its favor.[3] On this limited basis, we agree with First Federal; it had no duty to come forward with evidence negating the defendants' improperly supported motion. We therefore conclude that the district court erred in granting summary judgment in favor of the defendants on their claim for legal malpractice.
 
 
 12
 The district court also granted summary judgment on First Federal's claim for breach of an implied contract of indemnity. Tennessee law recognizes a cause of action for breach of an implied contract of indemnity under certain circumstances, such as where a defendant's tortious actions involve the plaintiff in litigation with a third party. See generally Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336 (Tenn.1985). Where the cause of action is available, the indemnitee can recover litigation expenses and attorneys' fees incurred in a third party action against the indemnitor; it is not necessary that the indemnitee be forced to pay a settlement or judgment to the third party. Id. at 338. The district court granted summary judgment in favor of the defendants on this claim, concluding that "in the absence of any actionable malpractice, First Federal has no right to seek indemnification for its litigation expenses." Joint Appendix at 64.
 
 
 13
 The right of recovery for a cause of action for breach of an implied contract of indemnity under Tennessee law is "based upon the relationship between the parties and their respective degrees of fault." Pullman, 693 F.2d at 339. Because the district court erred in granting summary judgment in favor of the defendants on the issue of fault, i.e., whether Myers breached a duty to First Federal, the court likewise erred in granting summary judgment to the defendants on their claim for breach of an implied contract of indemnity.
 
 III
 
 14
 For the foregoing reasons, we REVERSE and REMAND for further proceedings.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 In July, 1992, the RTC was appointed as conservator for First Federal and was thereafter allowed to substitute as plaintiff-appellant in this appeal. For the sake of clarity, we nonetheless refer to the plaintiff-appellant as First Federal rather than as RTC
 
 
 [2]
 In its first amended complaint, First Federal alleged that Myers had also been negligent in sending the corrected collateral assignment directly to Hordeski for his signature rather than to his counsel. The district court concluded that First Federal had failed to show that any harm resulted from this act. On appeal, First Federal has not challenged this conclusion, focusing solely on Myers' alleged unauthorized acceptance of the first collateral assignment. We therefore deem this second act of alleged negligence--the mailing of the corrected document to Hordeski for signature--to have been abandoned as an issue on appeal
 
 
 [3]
 The defendants have argued that the conditional nature of Myers' acceptance of the modified collateral assignment was established by paragraph 16 of the first amended complaint, which describes Myers' actions at the closing. However, First Federal prefaces this description in its pleading with the language, "[a]ccording to defendant Myers [.]" First Amended Complaint, p 16 (emphasis supplied). This same paragraph specifically states that "[Myers ] alleges that he accepted the modified Collateral Assignment subject to verification by the Bank that it had agreed to the modification." Id. (emphasis supplied). In its complaint, therefore, First Federal merely repeats Myers' own statements regarding the conditional nature of his acceptance; First Federal does not adopt these statements as truthful