IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2006 Session

**STEVE WHERRY AND MARY HOPKINS,
CO-EXECUTORS OF THE ESTATE OF MARGARET ARCHER, DECEASED
v.
UNION PLANTERS BANK, N.A.**

**An Appeal from the Chancery Court for Shelby County
No. CH-02-1459-1      Walter L. Evans, Chancellor**

_____

**No. W2006-00256-COA-R3-CV - Filed February 9, 2007**

_____

This case involves the alleged negligent administration of a trust. In 1964, the plaintiffs' decedent established a $1.7 million trust and named herself as the sole beneficiary. The defendant bank was named as the trustee and was given sole discretion to manage the trust investments. From 1964 until the decedent's death in 1999, the bank managed the trust fund and sent the decedent monthly statements describing the trust activities. When the trust terminated, it was worth approximately $880,000. The plaintiffs, co-executors of the decedent's estate, brought this action on behalf of the estate for negligent administration of the trust, arguing that the bank negligently failed to maximize the rate of return on the trust assets. The bank filed a motion for summary judgment based on, *inter alia*, the doctrine of ratification, asserting that the decedent had ratified the bank's management of the trust assets by failing to object to its decisions over the thirty-five-year life of the trust. The plaintiffs argued that the decedent was not sufficiently sophisticated in financial matters to ratify the bank's actions. The trial court granted the bank's motion for summary judgment. The plaintiffs now appeal. We affirm, concluding that, in light of the undisputed facts that the decedent was legally competent and was fully informed of the bank's actions in managing the trust investments, the decedent's level of sophistication in financial matters is immaterial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

James D. R. Roberts, Jr., and Janet L. Layman, Nashville, Tennessee, for the appellants, Steve Wherry and Mary Hopkins, co-executors of the Estate of Margaret Archer, deceased.

Clifford D. Pierce, Jr., and Scott B. Ostrow, Memphis, Tennessee, for the appellee, Union Planters Bank, N.A.

# OPINION

On September 15, 1964, Margaret Wherry Rozier, who later became Margaret Rozier Archer ("Mrs. Archer"), funded a living trust with assets of approximately $1.7 in municipal bonds and marketable stocks. Mrs. Archer was designated as the sole lifetime beneficiary of the trust, with her estate being the residual beneficiary. At the inception of the trust in 1964, she appointed Defendant/Appellee Union Planters Bank, N.A., now Regions Bank ("the Bank"), as the trustee to administer the trust. The Bank continued as trustee until Mrs. Archer's death in 1999. The trust instrument allowed Mrs. Archer to draw on the corpus of the trust, which she did regularly. The Bank sent Mrs. Archer and/or her designee monthly statements delineating the trust activities and the status of the trust.

The undisputed evidence shows that Mrs. Archer had a fairly affluent lifestyle, described as "Tara-like," supported in part by regular payments made to her from the trust. Records show that, over the duration of the trust, Mrs. Archer directed the Bank to distribute trust monies to her checking account for her use and benefit in amounts ranging from $2,000 to $7,500 per month. During her entire life, Mrs. Archer never held a job or provided for herself financially. She employed several domestic employees, including cooks, maids, butlers, and chauffeurs. The salaries for many of these employees were paid directly from the trust. On occasion, Mrs. Archer also made gifts to various family members out of the trust. Her gifts to her brother totaled at least $30,000. For the years 1994 through 1999, she directed the Bank to make annual $10,000 gifts to four family members. All told, from 1964 through 1999, the trust distributed at least $2,299,046 at Mrs. Archer's direction.[1]

It is undisputed that Mrs. Archer never objected to any of the Bank's investment decisions, and almost never interfered with the Bank's asset management. On a single occasion in 1977, Mrs. Archer requested that the Bank sell some securities for cash. At no other time did she direct the sale or purchase of any investments.

Mrs. Archer's husband, Robert Archer, died in the late 1980s. By then, Mrs. Archer was almost ninety years old. Upon her husband's death, she became solely responsible for managing her own financial affairs. In September 1990, Mrs. Archer asked the Bank to begin paying her monthly bills, such as utilities, taxes, insurance, and groceries, on her behalf out of the trust. In the early 1990s, the trust statements that had previously been sent to Mrs. Archer were instead sent to Mrs. Archer's niece, Plaintiff/Appellant Mary Wherry Hopkins ("Hopkins"), who helped Mrs. Archer with her daily affairs. In 1993, Mrs. Archer granted a general power of attorney to Hopkins and to Hopkins' brother, Plaintiff/Appellant Steve Wherry ("Wherry"). Hopkins and Wherry helped Mrs. Archer manage her financial affairs until her death on July 16, 1999, at the age of ninety-eight.

---

[1]This amount does not include funds distributed for the years 1987 through 1991, because the records for those years were not found.

The trust terminated upon Mrs. Archer's death. At that time, it was worth approximately $880,000. Hopkins and Wherry were appointed as the co-executors of Mrs. Archer's estate.

In July 1999, following Mrs. Archer's death, Wherry requested a complete accounting of the trust activities, and Hopkins and Wherry reviewed the trust documents received. They came to believe that the Bank had committed several acts of malfeasance related to the administration of Mrs. Archer's trust. They discovered that the Bank had negligently allowed Mrs. Archer's homeowners' insurance to lapse, that it had negligently paid a third party's taxes with funds from Mrs. Archer's trust, and that it had allowed a third party to pay Mrs. Archer's taxes.[2] The Bank fully corrected these mistakes and the plaintiffs do not seek to recover damages for these acts of malfeasance in this lawsuit. However, Wherry and Hopkins argue that these negligent acts evidence the Bank's failure to properly manage the trust.

On August 1, 2002, Hopkins and Wherry, as co-executors of Mrs. Archer's estate (collectively, "plaintiffs"), filed the instant lawsuit against the Bank. The plaintiffs allege several theories of recovery related to the Bank's mismanagement of Mrs. Archer's trust, arguing primarily that the Bank, as trustee, negligently invested Mrs. Archer's trust funds, contrary to the terms of the trust agreement.[3] The plaintiffs sought $98,569,009.07 in compensatory damages and $10,000,000 in punitive damages.

Discovery ensued. The plaintiffs' discovery depositions were taken. Mrs. Archer was described in the depositions as financially unsophisticated, believing that it was "tacky" for ladies to discuss financial matters. During the course of discovery, the plaintiffs explained that their damage calculation was based on their belief that, had the Bank properly diversified the corpus of the trust during its existence, it would have earned the market average rate of return of 12.3% after deductions for expenses and withdrawals.

On October 24, 2005, the Bank filed a motion for summary judgment, arguing that it was entitled to summary judgment based on the statute of limitations and/or the doctrines of ratification and laches. The Bank argued that the plaintiffs' claims were barred by the doctrine of ratification because Mrs. Archer was legally competent, was informed of the investments made by the Bank on behalf of the trust, and failed to complain about the trust investments during the thirty-five year period in which the Bank managed the trust. By her silence, the Bank argued, she ratified the Bank's investment decisions. The Bank further argued that, because of the extreme delay in filing the lawsuit and the undue prejudice that would result to the Bank, the lawsuit was barred by the doctrine of laches and/or the applicable statute of limitations. Attached to the Bank's memorandum of law were copies of the trust agreement, excerpts from the plaintiffs' depositions, and the affidavit of a Bank representative with records regarding the trust activities. The plaintiffs opposed the Bank's

_____

[2]The Bank had accepted responsibility for paying Mrs. Archer's homeowners' insurance and taxes from the trust fund.

[3]Though the complaint makes allegations that the Bank fraudulently concealed trust documents from the plaintiffs, claims based on intentional misconduct have not been pursued and are not at issue in this appeal.

motion for summary judgment, arguing that Mrs. Archer could not have ratified the Bank's decisions because she lacked the capability, motivation, or basic interest in involving herself in the handling of the trust. They argued that Mrs. Archer was financially unsophisticated and would have been unable to challenge the Bank's management of the trust during her lifetime, and that they, as executors, were unaware of the terms of the trust until after Mrs. Archer's death in 1999. Therefore, the plaintiffs maintain, the lawsuit could not have been filed before Mrs. Archer's death and should not be found to be barred by the doctrine of laches.

On December 20, 2005, the trial court heard oral argument from counsel for the parties. At the conclusion of the oral argument, the trial court granted summary judgment in favor of the Bank, based on the doctrines of ratification and laches. Regarding ratification, the trial court concluded that Mrs. Archer's "silence on [the Bank's] investment decisions constituted her ratification of the bank's decision relative to the investment where there is no showing that the bank made any illegal investments or any investment[s] that were clearly worthless." The trial court further concluded that the plaintiffs' claim was barred by the doctrine of laches based on the fact that the alleged misconduct spanned the thirty-five year life of the trust, and the Bank would be prejudiced by the considerable passage of time. On January 5, 2006, the trial court entered an order consistent with its oral ruling, declining to rule on the statute of limitations issue. The plaintiffs now appeal the trial court's order.

On appeal, the plaintiffs make the same arguments made to the trial court, that Mrs. Archer was unsophisticated in financial matters, and that she was incapable of having the knowledge necessary for effective ratification of the Bank's investment decisions during the thirty-five-year existence of the trust. Furthermore, they argue, the doctrine of laches is not applicable because the plaintiffs had no knowledge that a claim against the Bank existed until 1999, at which time they had an opportunity to review the trust documents and discover the Bank's negligence.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Warren*, 954 S.W.2d at 723 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must demonstrate, by affidavits or otherwise, that a disputed issue of material fact exists for trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

We first address the plaintiffs' claim that the trial court erred in granting the Bank summary judgment based on the doctrine of ratification. Under the doctrine of ratification, with full knowledge of an investment, a competent beneficiary who accepts or approves it cannot thereafter

complain with respect to the investment.[4] ***Knox County v. Fourth & First Nat'l Bank***, 182 S.W.2d 980, 989-90 (Tenn. 1944). In Tennessee, ratification by silence can occur when "a party with knowledge of the transaction fails for a reasonable time to protest or dissent." ***Valley Fidelity Bank & Trust Co. v. Cain Partnership, LTD.***, 738 S.W.2d 638, 640 (Tenn. Ct. App. 1987). "However, there can be no ratification unless a party is informed of the facts necessary to form an opinion." ***Id.***

The plaintiffs herein filed this lawsuit on behalf of Mrs. Archer's estate. The personal representative of an estate "succeed[s] generally to the position of the deceased in respect to suing and being sued in respect to the affairs of the deceased as they occurred or existed [p]rior to the death of the deceased." ***Western Surety Co. v. Wilson***, 484 S.W.2d 45, 48 (Tenn. Ct. App. 1972). Therefore, in analyzing the applicability of the doctrine of ratification in this case, the relevant inquiry is whether Mrs. Archer was a "competent beneficiary" who had knowledge of the Bank's actions and failed to protest or dissent within a reasonable time. ***See Knox County***, 182 S.W.2d at 989; ***Valley Fidelity***, 738 S.W.2d at 640.

In accordance with the applicable standard of review, we view the facts in a light most favorable to the plaintiffs. On appeal, the plaintiffs do not dispute that Mrs. Archer was legally competent or that the Bank sent her monthly statements of the trust's activities. They argue, however, that a dispute remains over whether Mrs. Archer was sufficiently financially astute to be considered a "competent" beneficiary who had "full knowledge" of the Bank's investments. In support of that argument, the plaintiffs cite their depositions in which they both testified that, based on their experiences with Mrs. Archer, they believed that she lacked the sophistication, capability, motivation, and basic interest in financial matters to participate in any meaningful way in the trust's management. Although Mrs. Archer directed the Bank to sell some of the trust's securities on one occasion in 1977, the plaintiffs contend that this directive to the Bank was most likely initiated by her husband, Robert Archer, on her behalf. Under these circumstances, they argue, a fact issue exists as to whether Mrs. Archer was capable of ratifying the Bank's actions, by silence or otherwise. In response, the Bank argues that summary judgment was appropriate based on the doctrine of ratification. The Bank relies on the undisputed facts that (1) Mrs. Archer was legally competent, (2) the Bank sent her a statement every month describing in detail the trust activities, and (3) during the thirty-five-year life of the trust, Mrs. Archer never protested or indicated any dissatisfaction with the Bank's actions. Consequently, the Bank maintains, Mrs. Archer must be deemed to have ratified the Bank's investment decisions. ***See Valley Fidelity***, 738 S.W.2d at 640.

In ***Valley Fidelity***, cited by the Bank, the settlor of a trust leased all of her real property to a partnership from which her three daughters derived 93% of the profits. The property was leased to the partnership at a rate of $75,000 per year. However, the partnership-lessee actually paid only $24,000 per year. Through their receipt of annual financial reports from the partnership, the three daughters had knowledge of the reduced payments. ***Id.*** at 638-40. Despite this knowledge, seven

---

[4]The Court in ***Knox County*** stated that this rule does not apply "when the beneficiary is led into an approval or acceptance of the investment by improper conduct of the trustee." ***Knox County***, 182 S.W.2d at 989. The plaintiffs in this case do not argue that this "improper conduct" exception is applicable here.

years after commencement of the reduced lease payments, the three daughters sued to recover the unpaid rent, i.e., the difference between the $24,000 paid and the $75,000 owed. After a trial, the jury found that the daughters had ratified and acquiesced to the $24,000 per year lease payments. *Id.* at 639. The daughters appealed. In upholding the jury's verdict, the appellate court described ratification as " 'confirmation after conduct' manifested by acts or statements." *Id.* at 639-40 (quoting ***Osborn Co. v. Baker***, 245 S.W.2d 419, 421 (Tenn. Ct. App. 1951) (quotation omitted)). The appellate court held that ratification by silence can occur when "a party with knowledge of the transaction fails for a reasonable time to protest or dissent." *Id.* at 640; ***see also Webber v. State Farm Auto. Ins. Co.***, 49 S.W.3d 265, 273, n.7 (Tenn. 2001). Thus, because the daughters were aware that the partnership-lessee had been paying a reduced rate but failed to complain about the reduced payments until seven years after they began, they were deemed to have ratified the reduced rent, and their claim under the lease was barred. *Id.* at 639-40.

The plaintiffs cited no authority to support their contention that a legally competent beneficiary such as Mrs. Archer must have a certain level of financial sophistication in order to effectively ratify the trustee's investment decisions. Mrs. Archer funded this trust and made herself the sole beneficiary thereunder. She granted the Bank, as trustee, absolute discretion over the management of the trust funds. She retained unfettered power to draw funds from the trust for any purpose, and the undisputed evidence shows that she exercised that power throughout the life of the trust. Mrs. Archer received monthly statements from the trust, describing in detail the trust activities. Over the course of the thirty-five-year life of the trust, Mrs. Archer never protested any investment decision by the Bank. Under these circumstances, we find no error in the trial court's conclusion that Mrs. Archer ratified the Bank's actions in managing the trust, and in its grant of summary judgment in favor of the Bank. This holding pretermits any other issues raised on appeal.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellants Steve Wherry and Mary Hopkins, co-executors of the Estate of Margaret Archer, deceased, and their surety, for which execution may issue, if necessary.

HOLLY M. KIRBY, JUDGE