In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00509-CR

____________


COURTNEY BROCK, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd District Court 

Brazoria County, Texas

Trial Court Cause No. 52,752 





O P I N I O N



 A jury convicted appellant, Courtney Brock, of assault on a public servant,
Tex. Penal Code Ann. § 22.01(b)(1) (Vernon Supp. 2008), and assessed
punishment at 50 years' confinement, to run after appellant's existing sentences,
and a $1,000 fine. In a single issue on appeal, appellant contends that there was
evidence at trial that he was guilty only of the lesser-included offense of
misdemeanor assault, and therefore, that the trial court erred by refusing to include
appellant's requested instruction on the lesser-included offense in the jury charge. 
We reverse and remand. Background Facts and Procedural History

 The offense occurred at the Darrington Unit of the Texas Department of
Criminal Justice (TDCJ), where appellant was serving a 20-year sentence for
aggravated robbery and a 10-year sentence for felon in possession of firearm. 
Complainant, Lieutenant H. DelaRosa, was then in his 25th year of service with
TDCJ and his 19th year as a lieutenant. DelaRosa's chief responsibility was to
manage the Darrington Unit's building schedule by assigning officers to cover the
movement of the inmates for their daily activities. These daily activities included
meals, recreation, showers, and shake downs. In times of high peak traffic,
DelaRosa works these shifts with other officers. 

 DelaRosa was in his tenth year of service at the Darrington unit on August
30, 2005, the date of the offense. He and another correctional officer, A.
Thompson, were supervising a group of "close custody" inmates, including
appellant, who were being transferred to and from their cells to the shower area in
the main building. The record shows that "close custody" inmates require
supervised escort to, from, and during showers. Close custody inmates are not
permitted to mix with the general prison population, and prison officials use a
"lock and close off" procedure for corridors that close custody inmates use to
travel from one area of the prison to another. DelaRosa estimated the group that
day at between 20 to 25 inmates, but Officer Thompson and other witnesses
estimated the number of inmates in the group as between 30 and 40. 

 DelaRosa testified that appellant stepped out of line while waiting in line for
towels before his shower and approached DelaRosa about a radio that had been
removed from appellant's cell a day or two earlier after a shake down in his unit. 
DelaRosa maintained that he spoke with appellant briefly, only once, and told him
that he would investigate, whereupon appellant returned to the line of inmates
awaiting showers. After about 20 minutes, the inmates had taken their showers
and were again in a line, to be escorted from the shower area through the prison to
return to their cells. 

 The inmates had progressed from the shower area and were approaching a
hallway leading to a locked corridor when the confrontation between appellant and
DelaRosa occurred. (1) DelaRosa was standing in the officers' area in the middle of
the hallway, and was near the front of the line of prisoners and close to a
previously locked doorway that led to another corridor ahead. The doorway to the
corridor was on DelaRosa's right, and another officer, K. Martinez, had unlocked
the door and was standing in the corridor and holding open its door. DelaRosa was
coordinating smooth traverse of the entryway by the inmates, by permitting just a
few to pass through the doorway at a time, when appellant broke from the line,
approached "from behind," on DelaRosa's "blind side" and hit DelaRosa on the
left side of his face. Appellant had to have stepped out of line in order to approach
DelaRosa from that angle.

 Thompson confirmed that he saw appellant strike DelaRosa at least twice. 
Thompson rushed from the rear of the line to assist as soon as he saw appellant
strike DelaRosa. Officer Martinez, the correctional officer who was coordinating
traverse of the corridor entry with DelaRosa, also testified that the altercation
started when appellant struck DelaRosa. Officer Thompson did not see DelaRosa
hit appellant in the face at any time. 

 DelaRosa's head jerked to the right from the impact of appellant's punch,
and his vision became blurred. He was hit in the face an additional two times and
stumbled backwards, but bars in the hallway broke his fall. DelaRosa knew he was
hit a second time, but did not know by whom at first, though he saw appellant's
face for a split second. When DelaRosa's vision cleared, he saw that Officer
Thompson had wrestled appellant to the floor by then and was struggling to pin
appellant's arms in order to handcuff him. DelaRosa rushed to join the struggle to
restrain appellant's right hand. DelaRosa grasped appellant's hand once, but when
appellant managed to free his hand from DelaRosa's grip, appellant tried to hit
DelaRosa again, whereupon DelaRosa struck appellant in the face. Thompson
managed to handcuff appellant, who was escorted to the infirmary and treated for
minor cuts and bruises. Lieutenant DelaRosa was treated for neck injuries and was
out of work for three months. 

 Officer Thompson testified that appellant was close to the rear of the line of
inmates coming from the showers and that appellant had broken away from the line
to run toward Lieutenant DelaRosa. But, inmates B. Morgan and M. Victor placed
both Thompson and appellant closer to the front of the line and near DelaRosa
when the altercation happened. Morgan testified he was at the front of the line and
just behind appellant and that appellant did not step out of line. Morgan denied
that he had actually seen DelaRosa strike appellant, but Morgan was "certain" that
DelaRosa had taken a swing at appellant as appellant filed past DelaRosa in the
line. Morgan also stated that appellant responded by striking DelaRosa, that there
were no conversations between appellant and DelaRosa before DelaRosa struck
appellant, and that appellant had not been acting aggressively toward DelaRosa. 

 Inmate Victor was at the opposite end of the line from the doorway, but was
"positive" that DelaRosa had hit appellant before appellant struck DelaRosa. 
According to Victor, he first heard arguments between appellant and DelaRosa,
then heard DelaRosa tell appellant to "get out of [his] face," then heard more
arguing, and then saw DelaRosa hit appellant. Victor heard appellant and
DelaRosa arguing earlier about the radio, but stated that appellant was not acting
aggressively to DelaRosa at that time. Both Morgan and Victor stated that
DelaRosa kicked appellant while Thompson wrestled and struggled on the floor to
handcuff appellant. 

 In his testimony, appellant claimed that he had three separate conversations
with DelaRosa, rather than the single one DelaRosa described, and that the
DelaRosa did not arrive at the scene until after appellant had showered. Appellant
deliberately took a short shower so that he could speak to DelaRosa about his
radio. When appellant approached, DelaRosa told him to "get out of [his] face"
and ordered appellant back in line. Appellant claimed that he left the line two
more times to approach DelaRosa about the missing radio while waiting in line to
return to his cell. By that time, both he and DelaRosa were angry, but appellant
insisted that he struck DelaRosa because DelaRosa had struck him first. 

 Under cross-examination, appellant acknowledged that he did not claim until
trial that DelaRosa was the aggressor and did not make that claim at his
disciplinary hearing. Both the officer to whom appellant made his statement and
the counsel substitute (2) at the Darrington unit confirmed that appellant did not claim
earlier that DelaRosa had hit him first. However, a partial videotape of the incident
recorded by Officer A. Green shows that appellant was asserting that DelaRosa hit
him first as appellant was being escorted from the area to the infirmary. 

 DelaRosa's and Thompson's physical contact with appellant in response to
his resistance constituted a use of major force under TDCJ policy, as opposed to
minor force and deadly force. Because the incident involved use of major force,
Officer Grant was immediately summoned to the scene once the fracas began to
document as much of the incident as possible by videotape, as required by TDCJ
policy. Though the videotape did not capture the initial altercation, the videotape 
recorded by Officer A. Green shows appellant claiming that DelaRosa hit him first
as appellant was being escorted from the area to the infirmary. The videotape was
played for the jury at trial. Officer Grant confirmed that appellant never made a
formal use-of-force statement. Officer E. Rocha, to whom appellant later gave a
statement of the incident, also testified that appellant did not claim that Lieutenant
DelaRosa had hit him first. 

 At the close of the evidence, the trial court denied appellant's request to
include the lesser offense of misdemeanor assault in the jury instructions. In
addition, the trial court denied appellant's dictated, requested instruction on lesser-included offense and his written, requested instruction. 

Lesser-Included Offense

 We review the trial court's decision regarding including a lesser-included
offense in the jury charge for abuse of discretion. See Dobbins v. State, 228
S.W.3d 761, 768 (Tex. App.--Houston [14th Dist.] 2007, pet. dism'd) (citing
Jackson v. State, 160 S.W.3d 568, 572 (Tex. Crim. App. 2005)). The two-pronged
Aguilar-Rousseau test determines whether a defendant is entitled to a lesser-included offense instruction in the jury charge. R. Hall v. State, 158 S.W.3d 470,
473 (Tex. Crim. App. 2005) (referring to Aguilar v. State, 682 S.W.2d 556, 558
(Tex. Crim. App. 1985) and Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim.
App. 1993)). This test requires: (1) that the lesser offense must actually be a
lesser-included offense of the charged offense, as defined by article 37.09 of the
Code of Criminal Procedure and (2) that the record must contain some evidence
that permits a rational jury to find that the defendant is guilty only of the
lesser-included offense. R. Hall, 158 S.W.3d at 473; see A. Hall v. State, 225
S.W.3d 524, 535 (Tex. Crim App. 2007). 

 As applied to the offenses of assault on a public servant and misdemeanor
assault, the Aguilar-Rousseau test requires that "there must be some evidence from
which a rational jury could acquit the defendant of the greater offense while
convicting him of the lesser-included offense." R. Hall, 158 S.W.3d at 473. Thus,
the evidence must demonstrate that the lesser-included offense is a "valid, rational
alternative to the charged offense." A. Hall, 225 S.W.3d at 536; Feldman v. State,
71 S.W.3d 738, 750-51 (Tex. Crim. App. 2002). In determining whether the
instruction on lesser-included offense is appropriate, the court "evaluates the
evidence in the context of the entire record, but does not consider whether the
evidence is credible, controverted, or in conflict with other evidence." R. Hall, 158
S.W.3d at 473. "Anything more than a scintilla of evidence may be sufficient to
entitle a defendant to a lesser charge." A. Hall, 225 S.W.3d at 536. When a trial
court improperly refuses a properly requested instruction on a lesser-included
offense, such that the jury's only option is to convict or acquit on the main charge,
a finding of harm is automatic, Roblain v. State, 224 S.W.3d 470, 477 (Tex.
App.--Houston [1st Dist.] 2007, no pet.), because the jury was denied the
opportunity to convict the defendant of the lesser offense. Ray v. State, 106
S.W.3d 299, 303 (Tex. App.--Houston [1st Dist.] 2003, no pet.) (citing Saunders
v. State, 106 S.W.2d 564, 571 (Tex. Crim. App. 1995)).

A. Elements of Assault and Assault on a Public Servant

 A person commits assault if he intentionally, knowingly, or recklessly
causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1) (Vernon
Supp. 2008). The offense becomes assault on a public servant and is a felony of
the third degree if, in addition, it is committed, as alleged in the indictment in this
case, against a person the actor knows is a public servant while the public servant
is lawfully discharging an official duty. Tex. Penal Code Ann. § 22.01(b)(1)
(Vernon Supp. 2008). The actor is presumed to have known the person assaulted
was a public servant if, as here, the person assaulted was wearing a distinctive
uniform or badge indicating employment as a public servant. Tex. Penal Code
Ann. § 22.01(d). 

B. Application of the Aguilar-Rousseau Test

 1. Code of Criminal Procedure Article 37.09 and Penal Code Section
22.01(b)(1) 


 Under the first element of the Aguilar-Rousseau test, the lesser offense must
actually be a lesser-included offense of the charged offense, as defined by Article
37.09 of the Code of Criminal Procedure. R. Hall, 158 S.W.3d at 473. The court
decides this element as a matter of law in advance of trial, without considering any
of the evidence submitted at trial. See A. Hall, 225 S.W.3d at 535 (adopting
"pleadings approach" as "sole test" for determining first element of Aguilar-Rousseau test). Article 37.09 states that an offense is a lesser-included offense if
any of the following circumstances exist:

 (1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;


 (2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;


 (3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or


 (4) it consists of an attempt to commit the offense charged or an
otherwise included offense. 


Tex. Code Crim. Proc. Ann. art. 37.09(1)-(4) (Vernon Supp. 2008). 


 The indictment tracked Article 37.09(1) of the Code of Criminal Procedure
and section 22.01(b)(1) of the Penal Code by charging that, on or about August 30,
2005, appellant 

 [D]id then and there intentionally, knowingly, or recklessly cause
bodily injury to Hector DelaRosa by striking [him] with [appellant's]
hand, and [appellant] did then and there know that . . . DelaRosa was
then are there a public servant, to-wit: a correctional officer and that
the said public servant was then and there lawfully discharging an
official duty.


As in R. Hall, the charged offense of assault on a public servant in this case
required the State to prove the elements of misdemeanor assault, pursuant to
section 22.01(a) of the Penal Code, and also the following elements: 

 1) the person assaulted was a public servant;

 2) the actor knew that the person he assaulted was a public servant;

 3) the person assaulted was discharging official duties at the time of the
assault; and

 4) the person assaulted was lawfully discharging official duties. 


R. Hall, 158 S.W.3d at 473; see Tex. Penal Code Ann. § 22.01(a), (b)(1) (Vernon
Supp. 2008). 

 As alleged by the State in the indictment, appellant met the first prong of the
Aguilar-Rousseau test as a matter of law because "the offense of assault of a public
assault differs from misdemeanor assault only because it requires proof of
additional facts." See A. Hall, 225 S.W.3d at 535-36; R. Hall, 158 S.W.3d at 473;
see Tex. Code Crim. Proc. Ann. art. 37.09(1). Accordingly, assault is a lesser-included offense of assault on a public servant. See A. Hall, 225 S.W.3d at
535-36; R. Hall, 158 S.W.3d at 473.

 2. Was There Evidence that Appellant Was Guilty Only of Assault?

 To be entitled to a jury instruction on the lesser-included offense of
misdemeanor assault under the second element of the Aguilar-Rousseau test, the
record must contain some "affirmative evidence . . . that negates one of the four
additional elements of assault on a public servant, yet admits the underlying
assault." R. Hall, 158 S.W.3d at 474. This inquiry demands that the court
"evaluate[] the evidence in the context of the entire record," without considering
whether "the evidence is credible, controverted, or in conflict with other evidence." 
Id. at 473; see also A. Hall, 225 S.W.3d at 536 (stating that anything more than a
scintilla may suffice to entitle a defendant to a lesser charge); McKinney v. State,
207 S.W.3d 366, 370 (Tex. Crim. App. 2006) ("If . . . facts are elicited during trial
that raise an issue of the lesser-included offense, and the charge is properly
requested, then a charge must be given.").

 In addition, any consideration of the lawfulness of a correction officer's
discharge of his duties must also consider section 9.53 of the Penal Code, the terms
of which exclude criminal responsibility of officers who maintain security in the
specialized circumstances of a correction facility. See R. Hall, 158 S.W.3d at 475. 
Section 9.53 is part of Title 2 of the Penal Code, which states "General Principles
of Criminal Responsibility," and also part of chapter 9 of Title 2, which provides
for "Justification Excluding Criminal Responsibility," and subchapter E, which
applies to "Law Enforcement." See Tex. Penal Code Ann. §§ 9.51-.53 (Vernon
2003). 

 Section 9.53 addresses "Maintaining Security in Correctional Facility" and
states,

 An officer or employee of a correctional facility is justified in
using force against a person in custody when and to the degree the
officer or employee reasonably believes the force is necessary to
maintain the security of the correctional facility, the safety or security
of other persons in custody or employed by the correctional facility, or
his own safety or security.


Tex. Penal Code Ann. § 9.53 (Vernon 2003). Section 9.53 thus provides that the
test to determine lawful discharge of a correctional officer's duties is whether the
officer's "use of force falls within [section 9.53]." R. Hall, 158 S.W.3d at 475
(citing Tex. Penal Code Ann. § 9.53 ). If the use of force meets the section 9.53
test, (1) the officer "is lawfully discharging his official duties" and (2) "if assaulted
at this time, the actor is guilty of assault on a public servant rather than mere
misdemeanor assault." Id. For a defendant-actor to be entitled to an instruction on
the lesser-included offense of misdemeanor assault, "there must be some evidence,
from any source," showing that the officer "was criminally or tortiously abusing
his status as a public servant at the time of the assault." Id. 

 Like the appellant in R. Hall, appellant contends that the record in this case
reveals affirmative evidence that negates the "lawful discharge" element of the
offense of assault on a public servant. See id. at 474. Appellant relies on his own
testimony and the testimony of inmates Morgan and Victor. Appellant and Victor
stated that DelaRosa swung at appellant as he filed past DelaRosa, and Morgan,
who stated he was directly behind appellant, was "certain" that DelaRosa hit
appellant and that appellant struck back. Morgan and Victor also stated that
appellant had not behaved aggressively toward DelaRosa and Morgan denied any
verbal exchange between the two men before DelaRosa struck appellant, though
Victor, who was further away from the men, described an angry exchange of words
before DelaRosa struck appellant. Morgan, however, further denied that appellant
had stepped out of line. Appellant contends this evidence is some evidence from
which a rational jury could conclude that DelaRosa was not "lawfully discharging
an official duty" as a public servant when he struck appellant, see id. at 475-76,
and, therefore, some evidence that appellant was guilty only of the lesser offense,
specifically, misdemeanor assault. We agree. 

 In R. Hall, the defendant and his cell-mate were in the corridor outside their
cell when the defendant approached a correctional officer about a complaint. Id. at
475. When their discussion became heated, and the officer's verbal command to
"move on" failed, the officer pushed or shoved the defendant toward his cell. Id. 
Because the defendant's lack of compliance with the verbal command to "move
on" created a danger to the officer's safety and the safety of others--a danger that
actually materialized--the officer's push or shove was "well within the scope of
his lawful duties" See id. 

 There was no evidence in R. Hall that the officer "unjustifiably or
maliciously hauled off and pushed or punched a quietly passing inmate who was
minding his own business." See id. at 476. Rather, the refusal of the angry
defendant in R. Hall to comply with the officer's legitimate order to "move on"
into his cell created a danger to the security and safety of both prisoners and staff
that officer sought to curb when he pushed or shoved the defendant to his cell. Id. 
The evidence in R. Hall showed that the defendant instigated the confrontation and
then refused to obey a legitimate order by the correctional officer. Id. 
Accordingly, there was no evidence to support a rational conclusion that the officer
was not lawfully discharging his official duties when the defendant retaliated by
punching the officer and, therefore, no evidence that entitled the defendant to an
instruction on the lesser-included offense of assault. Id. 

 In contrast to the lack of evidence that the correctional officer struck the
defendant unjustifiably or maliciously in R. Hall, see id., appellant and inmates
Morgan and Victor all described an unprovoked attack on appellant, to which he
responded by striking DelaRosa. Their story necessarily conflicts with DelaRosa's
testimony that he was blind-sided when appellant struck him and the testimony of
Officers Thompson and Martinez that appellant attacked DelaRosa. But resolving
that conflict is properly for the fact-finder and therefore does not affect our
analysis. See R. Hall, 158 S.W.3d at 473-74; McKinney, 207 S.W.3d at 370.

 Having evaluated the entire record, see R. Hall, 158 S.W.3d at 473, we hold
that there is some evidence from which a rational jury could find that Lieutenant
DelaRosa may have either criminally or tortiously abused his status as a public
servant by acting outside of his lawful discharge of his duties, as defined by Penal
Code section 9.53, when he allegedly assaulted appellant. See id. at 475. 
Accordingly, appellant has satisfied the second element of the Aguilar-Rousseau
test, and the trial court erred by denying appellant's properly requested instruction
on the lesser-included offense of misdemeanor assault. 

 We sustain appellant's issue.


Conclusion


 We reverse the judgment of the trial court and remand for a new trial. 




 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.


Publish. Tex. R. App. P. 47.2(b).

1. Prison procedures required that inmates proceed in line and follow lines painted on
the floors. In hallways, the lines are between the middle of the hallway and the wall. 
Inmates are not permitted to walk in the middle area, which is reserved for
supervising officers. 
2. The record reflects that the counsel substitute is an employee who represents the
interest of an accused in prison.